**DREHER LAW FIRM**
Robert Scott Dreher, Esq. (CSB #120527)
Catherine E. Rogers, Esq. (CSB #315607)
350 West Ash, Suite 101,
San Diego, California 92101
Phone: (619) 230-8828
Email: *scott@dreherlawfirm.com*

Attorneys for Plaintiffs.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC ARUNDEL, OWEN BOYER, JEFF HAYES, ROBERT KELSEY, ALEXIS LEFTRIDGE, RICHARD MELVIN, MICHAEL SANDERS, DEBRA SMITH, RICHARD STEVENSON, and SHERI PASANEN, on behalf of themselves and all others similarly situated,<br><br>                 Plaintiffs,<br><br>v.<br><br>CITY OF SAN DIEGO; MAYOR KEVIN FAULCONER; CITY COUNCILMEMBERS DAVID ALVAREZ, BARBARA BRY, CHRIS CATE, MYRTLE COLE, GEORGETTE GOMEZ, MARK KERSEY, SCOTT SHERMAN, CHRIS WARD, & LORI ZAPF; CITY OF SAN DIEGO POLICE DEPARTMENT; POLICE CHIEF SHELLEY ZIMMERMAN, all in their official capacities; and DOES 1 - 20,<br><br>                 Defendants. | Case No. **'17CV1433 BEN BLM**<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR INJUNCTIVE and DECLARATORY RELIEF AGAINST VIOLATIONS OF THE FOURTH, EIGHTH & FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION UNDER COLOR OF AUTHORITY (42 U.S.C. §1983), and THE CONSTITUTION and LAWS OF THE STATE OF CALIFORNIA.**<br><br>**JURY TRIAL DEMANDED**<br><br>(Related Case to:<br>*Spencer v. City of San Diego*, USDC Case No. 04 CV 2314 BEN (WVG); and<br>*Isaiah Project v. City of San Diego*, USDC Case No. 09 CV 2699 BTM (WVG)) |

# INTRODUCTION

While many other big cities are making substantive attempts to solve the growing issue of homelessness, San Diego has doubled-down on criminalization of homeless people as its main, indeed sole, method of addressing the matter. "*They need to move away, just move, even if it's two blocks*" is, in word and deed, San Diego's entire homelessness policy.

The City's tool for doing so is Municipal Code §54.0110 ("Unauthorized Encroachments Prohibited"), a vague statute which ostensibly makes it illegal for *any person to place any object on public property*, even for a moment. Not shelters, not beds, not food, not the "housing first" model recommended by the US Interagency Council on Homelessness and the National Alliance to End Homelessness nor successful social services programs implemented by cities such as San Francisco, Los Angeles, Austin, Salt Lake City. Instead, San Diego utilizes an unconstitutional barrage of jailings, tickets, fines, and stay-away orders to move people and their things "away."

People who live on the streets don't have a choice about whether to comply with this law. Nobody can perpetually carry their belongings. We must, at some point, set ourselves and our things down. People who are homeless have nowhere to set themselves or their things except in a public place. San Diego's actions effectively criminalize homelessness, in violation of the United States and California Constitutions.

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

Eric Arundel, an Army veteran suffering from pneumonia, was sitting in a folding chair one morning next to a sleeping bag and tarp he uses to keep warm when he was cited for "encroachment" by police.

It was just after 5:30 a.m. when Jeff Hayes was awakened by the sound of San Diego police officers unzipping his tent. He was weak from a recent round of hospital treatments for sepsis. After receiving a ticket for "encroachment," he packed up his tent and moved down the street.

Alexis Leftridge was pregnant and feeling sick early one morning when San Diego police ordered her out of her tent. She was arrested and cited for "encroachment" and jailed for several days. As an enticement to get out, Defendants offered her the option of a "stay away" order preventing her from going within 100 yards of the area where she was cited. She does her best to stay "away," but has nowhere else to go and now has several "stay away" orders against her. She is afraid she will be arrested again for walking along the wrong street or for placing herself or her belongings anywhere.

This is an action for injunctive and declaratory relief under 42 U.S.C. §1983 and CCP §§1060, 526(a) and 527, asking the Court to order the City to stop enforcing MC §54.0110 against people who are homeless who have nowhere else to place themselves or their belongings other than in a public place, and to cease and desist from jailing them, and seeking, forcing, and obtaining "stay away" orders against them, for violation of this inapplicable statute.

COMPLAINT FOR INJ. & DECL. RELIEF FOR VIOLATIONS OF U.S. & CALIF. CONSTITUTIONS

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this cause of action pursuant to 28 U.S.C. §1343(a)(3) and 42 U.S.C. §1983. Supplemental jurisdiction over Plaintiffs' state law claims is pursuant to 28 U.S.C. §1367. Jurisdiction supporting the claim for attorney fees is conferred by 42 U.S.C. §1988.

2. Venue is proper in the Southern District of California because all Defendants reside in the District and all events giving rise to Plaintiffs' claims occurred in the District. The relief Plaintiffs seek is within this Court's power to grant.

## CLASS ACTION ALLEGATIONS

3. Plaintiffs bring this action on their own behalves and on behalf of all other persons similarly situated. The Class of people that Plaintiffs represent consists of all those persons in the City of San Diego who are homeless and (1) have nowhere to place themselves or their belongings other than in public; (2) who fear being ticketed for violation of MC §54.0110 ("encroachment") if they set anything down; (3) who have been issued one or more citations for "encroachment;" (4) who have become the subject of "stay away" orders resulting from an "encroachment" citation; and/or (5) have been arrested or jailed for violating MC §54.0110.

4. The members of the Class are so numerous that individual joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). The Class is comprised of thousands of individuals who are homeless in the City of San Diego, and who are potentially committing a crime every time they place their belongings on public

COMPLAINT FOR INJ. & DECL. RELIEF FOR VIOLATIONS OF U.S. & CALIF. CONSTITUTIONS

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

property, and who therefore face the prospect of arrest, citation, trial, conviction, "stay away" order(s), and punishment under MC §54.0110. Joining all these individuals in this lawsuit is impractical and unnecessary.

5. The proposed Class is ascertainable and there is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. Fed. R. Civ. P. 23(a)(2). The class is united in its interests with respect to proof of Defendants' conduct, and the alleged effects caused by Defendants' actions. The questions of law and fact common to the class predominate over questions which may affect individual class members, including but not limited to whether Defendants have violated 42 U.S.C. §1983 by arresting, issuing citations and/or "stay away" orders, and/or otherwise punishing Plaintiffs for encroachment in violation of their constitutional rights.

6. Plaintiffs are asserting claims that are typical of the claims of the entire class of affected persons described above. Fed. R. Civ. P. 23(a)(3). The class representatives have the same essential characteristics as those of the proposed class, in that they were, or are fearful of being, cited, arrested, issued "stay away" orders, or otherwise punished pursuant to MC §54.0110 for the act of placing their belongings on public property at a time when they were homeless and had nowhere other than public property to put their belongings. Factual differences in Plaintiffs' respective circumstances will not defeat typicality. There is no unusual treatment from the City that will defeat the typicality of Class Representatives' claims. Further,

COMPLAINT FOR INJ. & DECL. RELIEF FOR VIOLATIONS OF U.S. & CALIF. CONSTITUTIONS

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

class treatment will permit the adjudication of claims by many class members who could not afford to individually litigate their claims or vindicate their rights against the government. There are no difficulties likely to be encountered in the management of this case which might preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this matter.

7. Plaintiffs will fairly and adequately represent the interests of the Class, and have no interests antagonistic to those of the Class. Fed.R.Civ.P. 23(a)(4). Plaintiffs' interests are aligned with those of the Class members, and all Class members stand to benefit from the declaratory and injunctive relief sought in this action. Plaintiffs have retained lawyers who are competent and experienced in class action litigation, who will zealously represent the interests of the Class, including absentee members. Plaintiffs' lawyers have discussed the responsibilities associated with this action with the Class Representatives. Class Representatives have agreed to represent the interests of the entire Class and are willing to take an active role in this litigation.

8. Plaintiffs' Counsel are well-qualified under the factors of Fed. R. Civ. P. 23(g)(1)(A). Counsel have: (1) spent significant time identifying and investigating potential claims in this action, including interviewing class members, and investigating relevant facts and laws underlying this claim; (2) have successfully handled class action lawsuits and other complex litigation matters in the past, including the types of civil rights claims asserted in this action; (3) have extensive

COMPLAINT FOR INJ. & DECL. RELIEF FOR VIOLATIONS OF U.S. & CALIF. CONSTITUTIONS

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

knowledge of applicable civil rights laws; and (4) are committed to spending the time and resources necessary to effectively represent the entire Class in this action.

9. This is the type of large-scale constitutional claim that falls exactly within the purview of Federal Rule of Civil Procedure 23(b)(2), allowing the Court to address a constitutional issue while providing access to justice to displaced and vulnerable people who would not otherwise be able to avail themselves of the judicial system. The disposition of these claims in a class action will benefit the parties, the Courts, Defendants and all the citizens of the City of San Diego. The disposition of Plaintiffs' and proposed Class Members' claims in a class action will provide substantial benefits to both parties and the Court, allowing the Court to address a systemic issue in one class action, rather than having to address potentially hundreds of related civil rights actions individually.

10. A class action is preferable and superior to other available methods for the fair and efficient adjudication of this controversy. As the primary relief sought is injunctive in nature, the burden and expense make it impractical for class members to seek redress individually for the wrongs done to them. The nature and amount of monetary damages sustained by each Class Member is similar in nature and may be established by common proof. Individual litigation by each class member would substantially burden the operation of the judicial system. This action will promote an orderly and expeditious administration and adjudication of the proposed Class claims, economies of time, effort and resources will be fostered and uniformity of

COMPLAINT FOR INJ. & DECL. RELIEF FOR VIOLATIONS OF U.S. & CALIF. CONSTITUTIONS

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

decisions will be insured. Without a class action, Class Members will continue to suffer damages, and Defendants' violations of law will proceed without remedy. Plaintiffs know of no difficulty that will be encountered in the management of this litigation which would or should preclude class certification.

11. The Class of people whom Plaintiffs represent is in need of the relief sought, as its members have been, are being, and will be damaged by Defendants' unconstitutional enforcement of MC §54.0110, in light of Defendants' failure to provide or identify or even acknowledge alternatives. Defendants' practice of issuing citations and forcing "stay away" orders, arresting, jailing, prosecuting, convicting, and punishing Plaintiffs for "encroachment," who have nowhere else to place themselves or their belongings, wastes valuable and precious tax dollars in enforcement and trial, diverts the Police's, the City's, and the Courts' resources from more serious issues, takes money from people who are homeless in the form of fines which they cannot afford, and takes up jail space which could be used to house truly dangerous criminals. The problem becomes compounded when people living on the street have no calendar system, and their belongings are frequently taken, destroyed, or lost. As a result, they inadvertently miss court hearings, turning what should be akin to "parking tickets" into major criminal events. The statute is vague, inapplicable, and randomly, sporadically, and subjectively interpreted and enforced.

12. The rights at stake are fundamental. Without class certification, the proposed Class will not have access to justice to address ongoing violations of their civil rights.

13. Plaintiff ERIC ARUNDEL is a resident of San Diego. He is a homeless individual as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. §11301 et seq., inasmuch as he lacks a fixed, regular and adequate nighttime residence. Defendants have cited Mr. Arundel multiple times in the downtown area for encroachment for placing belongings on the sidewalk, such as a tarp, bedding, clothing, medication, and toiletries. He is an Army veteran who served honorably from 1981-1985 as a mortar man in the U.S. and Korea, and he lost much of his hearing due to repeated loud explosions. After his discharge from the Army, Mr. Arundel often worked at least two jobs to help support his mother who had Alzheimer's, including work at a General Dynamics plant, a security service, and a tree service. Money troubles caused him to become homeless. At first, he stayed at St. Vincent DePaul Villages, but left after another resident attacked him; now he sleeps on the street. He suffers from pneumonia, and uses a tarp to stay warm and dry at night. He plans to attend the 2017 Veterans Stand Down event in hopes of finding housing. On the dates he received encroachment citations, Mr. Arundel had nowhere to put his belongings but in public.

14. Plaintiff OWEN BOYER is a resident of San Diego, and is a homeless individual as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. §11301 et seq., as he lacks a fixed, regular and adequate nighttime residence. Defendants have cited Mr. Boyer multiple times for encroachment for

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

placing personal items on the sidewalk. On April 15, 2017, he was sitting on a bench, in a public park near the trolley station at 1st and J Streets, when two police officers approached and told him to "move along." Although he voiced opposition to the officers' request, Mr. Boyer, who uses a cane or walker to move, nevertheless followed their command and began to walk away. But one of the police officers, evidently angered by Mr. Boyer's comments, pinned Mr. Boyer to the ground, hit him on the head, then put him in jail for five days without access to a judge. Mr. Boyer has been diagnosed with a psychological disability, and he plans to apply for disability benefits. He has attended trade school to learn computer drafting. He lived with his mother until she moved out of state to be with other family members. So now he sleeps on the streets and spends time at the library. On the dates of these events, he had nowhere to put his belongings but in public.

***Photo:*** *Officers pinning down Owen Boyer during his arrest for encroachment.*



COMPLAINT FOR INJ. & DECL. RELIEF FOR VIOLATIONS OF U.S. & CALIF. CONSTITUTIONS

15. Plaintiff JEFF HAYES is a resident of San Diego, California. He is a homeless individual as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. §11301 et seq., inasmuch as he lacks a fixed, regular and adequate nighttime residence. On December 6, 2016, Defendants cited him pursuant to MC §54.0110 in the area of J Street, between 13th and 14th Streets. He was unable to pay his fine or show up to court after being hospitalized for sepsis later that month. Mr. Hayes is active in Voices of Our City Choir, a community singing group that raises awareness about homelessness. Prior to this incident, Mr. Hayes had no criminal record. He had a career in Internet Technology until he was unable to work due to deteriorating health caused by Multiple Sclerosis—which eventually led him to become homeless. When he received a citation for violating MC §54.0110 he had nowhere to put his belongings but in a public place.

16. Plaintiff ROBERT KELSEY is a resident of San Diego. He is a homeless individual as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. §11301 et seq., inasmuch as he lacks a fixed, regular and adequate nighttime residence. Defendants have cited Mr. Kelsey multiple times under MC §54.0110 for sleeping on the sidewalk with his belongings. Defendants arrested him one morning a little after 5:30am for sleeping in his tent in the East Village area behind Saint Vincent DePaul Villages. Mr. Kelsey has HIV, and told his arresting officer that he needed to take his AZT medication, but the officer did not let him access the medicine bottle. Instead, he spent three days in jail without access to

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

critical antiviral medication. He ended up living on the street because he was unable to find work, but he occasionally finds gigs as a temporary day laborer. When he received the above citations and was arrested for violating MC §54.0110, he had nowhere to put his belongings but in a public place.

17. Plaintiff ALEXIS LEFTRIDGE is a resident of San Diego. She is a homeless individual as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. §11301 et seq., inasmuch as she lacks a fixed, regular and adequate nighttime residence. Defendants have cited and arrested her pursuant to MC §54.0110 multiple times in the downtown area. Defendants have never formally convicted Ms. Leftridge of violating this Code. Instead, Defendants pressured her to accept "stay away" orders as a condition of release (pretrial and pre-conviction), from custody in jail. Ms. Leftridge worked as a Certified Nursing Assistant until she lost her job in September of 2014. With no money for rent, she was evicted from her apartment and slept on the street for the first time at age twenty. Scared and alone, she slept outside near Civic Center Plaza. Police woke her and drove her to Rachel's House, a women's shelter where she entered a raffle drawing for a shelter bed. She didn't win the raffle. For the next several months, she stayed briefly at the Rescue Mission and on various friends' couches. When her shelter options ran out, she began living in a tent near others who were homeless downtown, in an effort to seek safety, protection and company. Ms. Leftridge's aunt and uncle also sleep in a tent, and she is close to her family and friends living on the street, whom she calls "street

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

sisters." While on the street, she met her fiancé, who is also homeless. The pair have been together for two years, and Alexis gave birth to a baby boy this April. She and her son now have a room at Saint Vincent DePaul's Village, though her fiancé still lives on the street (no shelter will accept all three together). She works hard to be a good mother, and her fiancé is active in their son's life. On the dates she received encroachment citations, Ms. Leftridge had nowhere to put her belongings other than a public place, and she is continually at risk of violating a "stay away" order when utilizing services at St. Vincent's.

18. Plaintiff RICHARD MELVIN is a resident of San Diego. He is a homeless individual as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. §11301 et seq., inasmuch as he lacks a fixed, regular and adequate nighttime residence. In November 2016, Defendants cited Mr. Melvin for encroachment for sleeping in a tent near Imperial Ave. and 12th Street. At approximately 5:45 a.m., police approached his tent yelling, "anyone in the tent – come out with your hands up!" Mr. Melvin unzipped his tent and did so, and saw two police cars and four police officers. They asked him why he was sleeping there in a tent, and he informed them that he had nowhere else to go. He is a US Army veteran with an honorable discharge, and has had various jobs over the years including police officer and firefighter. He suffers from a seizure disorder and was recently treated at UCSD Medical Center, and has been homeless for eight months since he and his girlfriend were evicted from their apartment. He has written a book

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

entitled "My Life as a Poet,"[1] and he participates in the Voices of Our City Choir. On the date of this incident, he had nowhere to put his belongings but in public.

19. Plaintiff MICHAEL SANDERS is a resident of San Diego. He is a homeless individual as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. §11301 et seq., inasmuch as he lacks a fixed, regular and adequate nighttime residence. Defendants have cited Mr. Sanders multiple times for encroachment for placing his belongings on public property—which include a chair, bedding, and a tarp. Mr. Sanders was a consultant and business manager, but money troubles led him to become homeless. He has not been able to find another job and now sleeps on the street near others downtown, frequently spending time at the library. He has nowhere to put himself or his belongings but in public.

20. Plaintiff DEBRA SMITH is a SAN DIEGO resident. She is a homeless individual as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. §11301 et seq., inasmuch as she lacks a fixed, regular and adequate nighttime residence. Defendants have cited Ms. Smith multiple times for

---

[1] *THREE ANGELS*

*Three Angels happened too
befriended me when I was close
too death you see...*

*It was their love that came
straight away too save me....*

*Be it right or be it wrong,
they've made it possible
for me to go on......*

*So from here on out in life
all the unconditional love
I give to other you see...*

*Come from the love those
Angels showed me.....*

*(© Richard Melvin)*

COMPLAINT FOR INJ. & DECL. RELIEF FOR VIOLATIONS OF U.S. & CALIF. CONSTITUTIONS

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

encroachment for placing her belongings, including her bedding, clothing, and a chair, on public property. She was cited four times in six days for under MC §54.0110 near the intersection of 15th Street and Island Ave. The citing officer told Ms. Smith he was doing so to get her to "move away" from other individuals the officer thought were a bad influence on her. She did not want to move away from her friends, but ultimately she moved down the street to avoid getting more tickets.[2] Ms. Smith worked as an accountant for 25 years, and she has one daughter and a grandson who live in another state. Prior to becoming homeless, she had a brain aneurism that required five open-skull surgeries. She is now disabled and takes multiple medications daily for several health conditions. She has been homeless for approximately a year and a half after her roommate of ten years abruptly moved to Missouri. She could not afford rent and was unable to find another room on her limited budget, but was able to stay with a friend for five months. In March 2016 she began living on the street. She sleeps in a sleeping bag downtown near others who make her feel safe. While living on the street, she has had her belongings taken on numerous occasions—including her purse, backpack, cell phones, etc. As a result, she lost her encroachment citations and missed court dates. When she received the citations, she had nowhere to put her belongings other than in a public place.

---

[2] While the citing police officer was clearly well-intentioned, this incident underscores the arbitrary nature of the language, application, and enforcement of MC §54.0110. The code's vague wording requires officers on the beat to interpret the statute, its use, breadth, and application.

COMPLAINT FOR INJ. & DECL. RELIEF FOR VIOLATIONS OF U.S. & CALIF. CONSTITUTIONS

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

21. Plaintiff RICHARD STEVENSON is a resident of San Diego, California. He is a homeless individual as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. §11301 et seq., inasmuch as he lacks a fixed, regular and adequate nighttime residence. Defendants cited Mr. Stevenson early one morning for sleeping in a tent near 19th and Commercial Streets. He ended up living on the street in San Diego after leaving the Bay Area due to personal family trauma. Prior to being homeless, he worked in shipping and receiving, and he was also a seasonal firefighter. He is disabled due to injuries resulting from a car accident, as well as Multiple Sclerosis which requires daily injections. On the dates of these alleged violations, he had nowhere to put his belongings but in public.

22. Plaintiff SHERI PASANEN is a resident of San Diego, California. She is a homeless individual as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. §11301 et seq., inasmuch as she lacks a fixed, regular and adequate nighttime residence. She spent 30 years working in non-profit social services, and is now retired due to a disability, which caused her to end up living on the street. Defendants cited Ms. Pasanen per MC §54.0110 for placing her 5-inch camping stove on the sidewalk to heat up her morning coffee. She took a bus to court for her arraignment, but got sick and missed the subsequent hearing. Defendants issued a warrant for her arrest, that she later had recalled and a new date set. When she received the citation, she had nowhere to put her belongings but a public place.

COMPLAINT FOR INJ. & DECL. RELIEF FOR VIOLATIONS OF U.S. & CALIF. CONSTITUTIONS

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

23. The CLASS is comprised of hundreds of individuals who are homeless in San Diego, and who, according to Defendants, are committing a crime every time they place their belongings on public property, even for a moment, and who therefore face the prospect of arrest, citation, jail, trial, conviction, "stay away" order(s), and punishment under MC §54.0110.

24. Defendant CITY OF SAN DIEGO is a municipal corporation organized, acting and existing under the laws of California which, through its agents and/or policymakers Defendants SAN DIEGO POLICE DEPARTMENT, SAN DIEGO POLICE CHIEF SHELLEY ZIMMERMAN, and CITY COUNCIL MEMBERS, and others, arrests and cites people pursuant to MC §54.0110, and has a policy of seeking "stay away" orders as a result of citations under this statute.

25. Defendant SAN DIEGO POLICE DEPARTMENT is the CITY's law enforcement agency, and Defendant SHELLEY ZIMMERMAN is the CITY's Chief of Police, and in that capacity (in which she is sued here) is responsible for the operation of the Department and its officers in compliance with public laws. San Diego Municipal Code §22.0601 charges the Department and its officers with the *"preservation of the peace and order of the City, the protection of all persons and property, and the enforcement of all penal ordinances and laws."* The City Charter mandates that the Chief of Police shall appoint, direct, and supervise the personnel of the Department and exercise all powers and duties provided by general laws or

COMPLAINT FOR INJ. & DECL. RELIEF FOR VIOLATIONS OF U.S. & CALIF. CONSTITUTIONS

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

by ordinance. She is also charged with developing and directing policies and guidelines for enforcement and interpretation of §MC 54.0110.[3]

26. Defendants KEVIN FAULCONER and DAVID ALVAREZ, BARBARA BRY, CHRIS CATE, MYRTLE COLE, GEORGETTE GOMEZ, MARK KERSEY, SCOTT SHERMAN, CHRIS WARD, and LORI ZAPF are the CITY's Mayor and City Councilmembers, respectively. They are sued here in their Official Capacities as elected officials, agents and employees charged with and responsible for, but are not, designing, orchestrating and carrying out the City's actions, policies, and procedures equally and in compliance with the law. Under their watch and inaction, the Defendants use MC §54.0110 to circumvent the agreements and Court orders issued in the Spencer and Isaiah cases along with unconstitutional "loitering' statutes, and they have developed, refined and implemented an overall policy of "*they need to move away, just move, even if it's two blocks,*" utilizing jail, tickets, fines, threats and "stay away" orders, to address the issue of homelessness.

27. Plaintiffs are informed and believe that the Defendants sued herein as DOE DEFENDANTS 1 - 20 were officers, employees, and agents of the other Defendants,

---

[3] In reality, Defendants often delegate to third parties to avoid accountability. For example, last summer the City contracted with a Padres consultant to oversee installation of jagged rocks as a homeless deterrent in East Village. Amidst controversy over the project's use of "discretionary funds," the City disavowed the events. See, e.g., *http://www.voiceofsandiego.org/topics/government/rocks-deter-homeless-encampments-star-game-prep-emails-show/*.

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

who aided, abetted, assisted, and/or otherwise helped plan, organize, orchestrate or carry out the actions alleged here. Plaintiffs are ignorant of the true names and capacities of the Defendants sued herein as DOES 1 - 20 and therefore sue those Defendants by fictitious names. Plaintiffs will seek leave of court to amend this complaint to allege their true names when ascertained. Plaintiffs are informed and believe, and thereon allege, that each of these actors is liable for, and caused, the injuries and constitutional rights violations and violations of law alleged herein.

28. Plaintiffs are informed and believe and thereon allege that at all times herein mentioned each of the Defendants was the agent, servant, and employee of each of the remaining Defendants, and at all times herein mentioned, each was acting within the time, place, and scope of said agency and employment.

## FACTS

29. The San Diego City Council did not design or intend for Municipal Code §54.0110 ("Illegal Encroachment" or "MC §54.0110") to be used against people living on the street. It is an obscure ordinance intended to address trash cans and dumpsters left on the sidewalks too long after trash pickup. The City's Environmental Services Department recommended MC §54.0110's adoption, and an October 18, 2007 Authorizing Ordinance reveals that it was intended to address "unauthorized solid waste or recycling dumpsters and bins discovered in the public right-of-way or on public property." No community participation took place before MC §54.0110's enactment, and there was no public discussion or written record

COMPLAINT FOR INJ. & DECL. RELIEF FOR VIOLATIONS OF U.S. & CALIF. CONSTITUTIONS

DREHER LAW FIRM

350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

1   giving notice of, or of any desire whatsoever for, the its use against people who are

2   homeless. It was intended as a minor remedy akin to a parking ticket with no serious

3   ramifications. Indeed, when MC §54.0110 is used as intended, an owner of trash

4   cans left too long on a sidewalk receives a courtesy notice from the City politely

5   asking that the trash cans be moved.

6

7   30. The Defendants seized upon MC §54.0110, years after it was adopted, as a

8   tool to target people who are homeless, in contravention of the City Council's intent

9   when enacting the statute. Defendants use it now as a replacement for the City's anti-

10  loitering laws which were found unconstitutional years ago, and it is now the

11  Defendants' primary basis for dealing with people living on the street — arresting

12  them, citing them, jailing them, fining them, and issuing "stay away" orders, and

13  otherwise punishing people for placing themselves and their objects in public. In

14  contrast, police rarely if ever enforce MC §54.0110 against housed residents (e.g., a

15  residence whose trash cans remain on the sidewalk all day, a lawyer who sets her

16  briefcase on the sidewalk to take a phone call, a couple using a picnic blanket in a

17  park, or a restaurant which puts too many umbrellas or signs onto the sidewalk).

18  31. The number of MC §54.0110 citations rose six-fold (to 1,600 citations)

19  between 2010 and 2014, primarily if not solely due to enforcement against people

20  who are homeless.[4] With no effect other than to increase the number of citations.

---

[4] *Law Intended to Address Trash Dumpsters Is Increasingly Being Used on the Homeless,* Voice of San Diego, Davis, Aug. 15, 2016.

COMPLAINT FOR INJ. & DECL. RELIEF FOR VIOLATIONS OF U.S. & CALIF. CONSTITUTIONS

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

32. Defendants admit to using MC §54.0110 as an end-run around the City's settlement agreement with homeless advocates in *Spencer v. City of San Diego*, which limited enforcement of the state's "illegal lodging" statute.[5] The City now charges people who are homeless with violating MC §54.0110 in cases where illegal lodging violations are no longer an option due to the *Spencer* settlement agreement.[6]

33. The vague language of MC §54.0110 makes it illegal for *any person to place any object on public property*.[7] It contains no defined terms, and no legislative guidelines for enforcement. There are no time limits or requirements specified; no identification of types of objects; no provision for whether access is otherwise available or blocked. On its face, it can apply to anything or anyone anywhere at any time for any length of time. There are no guidelines for the exercise of judgment in carrying it out, and no uniformity in the acts of doing so. Its use is subject to whims and moods. A person of ordinary intelligence is left to wonder whether innocent

---

[5] The settlement agreement and Court order in *Spencer* suspended the City's enforcement of Penal Code Section 647(j/e) between the hours of 9:00pm and 5:30am. *USDC Case No. 04 CV 2314 BEN (WMC)*.

[6] The City is also violating its 2011 settlement agreement and Court order in *Isaiah Project v. City of San Diego*, wherein the City agreed to establish and comply with new policies and procedures for the collection, removal and storage of personal property found on city streets and property *USDC Case No. 09 CV 2699 BTM (WVG) (See, Facebook "Homelessness News San Diego" social media account)*.

[7] MC §54.0110, "*Unauthorized Encroachments Prohibited*" provides that:

"[i]t is unlawful for any person to erect, place, allow to remain, construct, establish, plant, or maintain any vegetation or object on any public street, alley, sidewalk, highway, or other public property or public right-of-way, except as otherwise provided by this Code. (Added 10-18-2007 by O-19670 N.S.; effective 11-17-2007).

COMPLAINT FOR INJ. & DECL. RELIEF FOR VIOLATIONS OF U.S. & CALIF. CONSTITUTIONS

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

1    conduct of placing an object in public will be deemed criminal, and indeed,

2    depending upon the mood of the Defendants, it can be. Defendants' only real criteria

3    seems to be whether a person is housed or unhoused. If the person is housed, they

4    receive a nice letter. If not, they are cited, jailed, fined, threatened, and ordered to

5

6    'stay away.' The statute has effectively been stretched by Defendants to make illegal

7    the placement of anyone, anywhere, anytime.

8

9    34. Most people living on the street, including Plaintiffs, are not homeless by

10   choice. The most common reported causes of homelessness in San Diego are:

11   abuse/violence, disability, being kicked out/running away, loss of a family member,

12

13   loss of a job, and money issues.[8] San Diego's homeless population of 5,619 is greater

14   than the number of shelter beds available (2,688).[9]

15

16   35. San Diego's homeless population of 5,619 is greater than the number of free

17   transitional storage units (304 lockers/ 90 bins).[10] The City's only free Transitional

18   Storage Center (TSC), run by the non-profit Think Dignity, is currently at full

19

20   capacity with a waiting list. The annual cost to operate the TSC is approximately

21   $120,000. The TSC can serve less than 10% of San Diego's homeless population.

22

23

24

25   [8] *2017 Homelessness Summary Fact Sheet,* San Diego County Regional Task
     Force on the Homeless (RTFH).

26   [9] Figure obtained from the RTFH's *2017 Housing Inventory Count* by adding
27   the number of temporary and emergency shelter beds in the City of San Diego,
     including beds for people with mental health needs.

28   [10] Information and figures regarding the TSC provided by Think Dignity.

COMPLAINT FOR INJ. & DECL. RELIEF FOR VIOLATIONS OF U.S. & CALIF. CONSTITUTIONS

But rather than invest in more facilities like the TSC to provide more storage options and actually address the issue, the Defendants instead hired a public relations operative, at an annual salary of $180,000. She lasted seven months, during which Defendants did nothing other than issue <u>more</u> "encroachment" citations and redouble their efforts to criminalize people living on the street, while ignoring the fact that the cost of doing so far exceeds the cost of providing permanent supportive shelter.[11]

36. Due to lack of shelter or storage options in San Diego, people living on the street have no alternative but to place their belongings—including those necessary for health, hygiene, safety—in a public place. As a result, placing oneself or one's possessions on public property is an involuntary and unavoidable result of being homeless. People who are homeless cannot avoid violating MC §54.0110.

37. Living on the street can be deadly. In the fiscal year ending September 30, 2016, 117 unsheltered people died on San Diego's streets, double the number from two years ago.[12]

38. Belongings like blankets, clothing, snacks, hygiene products, tarps, medicine, etc.—as well as bags, backpacks, or carts to carry personal belongings—are necessary for health and wellbeing of individuals living on the street.

---

[11] A 2004 Lewin Group report demonstrated that, in nine U.S. cities, the cost of jailing people living on the street was two to three times more expensive than the cost of providing permanent supportive housing or shelter.

[12] Daniel Wheaton, *Homeless Deaths Have Doubled Over Two Years*, San Diego Union Trib. (Nov. 28, 2016).

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

39. Placing or sheltering oneself somewhere is not voluntary conduct. Unprotected exposure to cold and rain can pose serious health risks (and indeed, the City is currently experiencing an outbreak of Hepatitis A among its homeless people (*http://www.sandiegocounty.gov/content/sdc/hhsa/programs/phs/community_epide miology/dc/Hepatitis_A.html*).[13] Some people living on the street use tents or tarps to escape harsh weather and pests, and/or to get a modicum of privacy and dignity. Such shelters also provide warmth, safety, security, and a space for rest, all of which are defined as "basic human needs" by psychologist Abraham Maslow, who studied the "hierarchy of needs" among human beings.

40. By using MC §54.0110 to punish the act of placing one's belongings in public, or sheltering oneself, the City is punishing the status of homelessness.

41. After people living on the street are arrested and jailed and/or charged under MC §54.0110, they are, as standard practice, pressured by Defendants to sign "stay away" orders in exchange for release from jail or the dismissal of charges and expensive fines and fees. These broad orders prohibit individuals from going within a certain distance—often 100 yards—of the incident of arrest. "Stay away" orders can lead to more arrests when violated. When these orders compound, individuals

---

[13] People experiencing homelessness are some of the most frequent victims of hypothermia, a potentially deadly condition in which the body's temperature drops below 95°F. Jane E. Brody, *New York Times*, *Surviving the Cold, or Even the Not So Cold*, Jan. 9, 2007. Temperatures need not be freezing for hypothermia to occur. *Id.* Most cases occur in air temperatures of 30-50°F, and can even occur due to overexposure at 60-70°F. *Id.* According to US Climate Data, the average low temperature in San Diego in December was 48°F, with an average of 6 inches of precipitation.

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

are barred from large areas of the City, which often include streets where there are vital homeless resources—including medical centers, food distributions, faith-based activities, temporary shelters, rehabilitation groups, and other services. For example, in the square block from Market to Imperial on 16th and 17th Streets, there are four homeless services providers—including God's Extended Hand, Saint Vincent DePaul Villages, Alpha Project's Neil Good Day Center, the Transitional Storage Center, various food distributions, and a daily distribution of water bottles to people living on the street. Stay-away orders barring access to these areas prohibit individuals from accessing necessities like food and water, or seeking the very shelter that would let them avoid violating MC §54.0110.

42. Citations for violation of MC §54.0110 are classified as misdemeanors (rather than as infractions or parking tickets to which the violation is more akin) are set for hearing and trial in the Clairemont Mesa Courthouse. This procedure is known by Defendants to be as difficult as possible for Plaintiffs and the Class members to contest these citations. Defendants know that people living downtown on the street cannot easily get to Clairemont, because they often can't afford transportation, and/or, even if they can afford it, the MTS bus rules do not allow them to bring their belongings on the bus – thus, homeless people risk violating the very law whose citations they wish to contest, by attempting to contest the citations. Further, most people experiencing homelessness have no calendar system, and their

COMPLAINT FOR INJ. & DECL. RELIEF FOR VIOLATIONS OF U.S. & CALIF. CONSTITUTIONS

belongings (including the initial citation) are frequently stolen, destroyed, or lost. As a result, they often inadvertently miss court hearings.

43. By forcing people living on the street into the criminal justice system under MC §54.0110, the City is clogging the court system, wasting public resources, undermining any prospect of limiting or reversing homelessness, and perpetuating a vicious cycle of warrants, fines, arrests, and "stay away" orders—which makes it more difficult for people to get out of homelessness.

### FIRST CLAIM FOR RELIEF
**Violation of 42 U.S.C. §1983**

44. Plaintiffs incorporate the allegations in paragraphs 1-43 above.

45. 42 U.S.C. §1983 provides that, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…".

46. Defendants' actions violate Plaintiffs' civil and constitutional rights, including, but not limited to, Plaintiffs' rights under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, and Article 1, §7, Article 1, §15; and Article 1, §17 of the California Constitution.

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

47. Defendants are acting under color of authority, in their official capacities as representatives of the City of San Diego.

### SECOND CLAIM FOR RELIEF
### Cruel and Unusual Punishment in Violation of the
### United States and California Constitutions

48. Plaintiffs incorporate the allegations in paragraphs 1-43 above.

49. Forces beyond Plaintiffs' control, such as unemployment, poverty, medical conditions, and the failure of the Defendant to provide alternatives, including but not limited to those which may be mandated by law, have compelled Plaintiffs and others to live and place their belongings in public.

50. Because of Plaintiffs' status as homeless and unsheltered, Plaintiffs must carry their belongings—including items necessary for their health, safety, and security—with them in their daily lives. Plaintiffs must set themselves and their belongings down on public property because they do not have access to private shelter or storage. Placing belongings on public property constitutes an involuntary and unavoidable manifestation of the Plaintiffs' status as homeless. Plaintiffs may not avoid committing acts that violate MC §54.0110, which criminalizes placing any object on public property, at any time for any length of time, even a moment, ever.[14]

---

[14] In a *Statement of Interest of the United States in Bell v. City of Boise*, 834 F.Supp.2d 1103, filed August 6, 2015 (available at: *https://www.justice.gov/crt/file/761211/download*) the U.S. Department of Justice clarified its recommended framework for analyzing Eighth Amendment claims relating to criminalization of homelessness:

"If sufficient shelter space is unavailable because a) there are inadequate beds for the entire population, or b) there are restrictions on those

COMPLAINT FOR INJ. & DECL. RELIEF FOR VIOLATIONS OF U.S. & CALIF. CONSTITUTIONS

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

51. Defendants' pattern of citing, arresting, seeking "stay away" orders, prosecuting, trying, convicting, and fining or incarcerating homeless individuals for placing their belongings in public, under color of law, constitutes punishment of Plaintiffs based on their status as homeless persons, and as such, is cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution.

52. Plaintiffs have standing to bring this suit under the Eighth Amendment of the United States Constitution, as well as Article 1, §17 of the California Constitution, for the following reasons: (1) the punishments, including "stay away" orders, that have been imposed upon Plaintiffs are of the type which should be and are limited and prohibited by the Eighth Amendment; (2) the punishments that have been imposed upon Plaintiffs are grossly disproportionate to the severity of the "crime" of setting down one's belongings; and (3) the acts and conduct which have been made criminal and for which Plaintiffs have been cited, arrested, and otherwise punished are acts and conduct of which the Eighth Amendment and Article 1, §17 of the California Constitution prohibit criminalization, conviction and punishment.

**THIRD CLAIM FOR RELIEF**
**Violation of Due Process Under the**
**United States and California Constitutions**

53. Plaintiffs incorporate the allegations in paragraphs 1-43 above.

---

beds that disqualify certain groups of homeless individuals (e.g., because of disability access or exceeding maximum stay requirements), then it would be impossible for some homeless individuals to comply with these ordinances. As set forth below, in those circumstances enforcement of the ordinances amounts to the criminalization of homelessness, in violation of the Eighth Amendment."

COMPLAINT FOR INJ. & DECL. RELIEF FOR VIOLATIONS OF U.S. & CALIF. CONSTITUTIONS

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

54. The Fifth and Fourteenth Amendments to the United States Constitution and Article I, §7 of the California Constitution, guarantee that no person shall be deprived of life, liberty, or property without due process of law.

55. Under the requirements of Due Process, laws cannot be vague, nor can they be written in a way that encourages arbitrary and discriminatory enforcement. *People v. Heitzman*, 9 Cal. 4th 189, 199–200 (1994). Laws must be reasonably certain and definite so that ordinary people can understand what conduct is prohibited. *Id.* Laws that fail "to draw a clear line between innocent and criminal conduct," are unconstitutionally vague (*Desertrain v. Los Angeles*, 754 F.3d 1147, 1155–56 (9th Cir. 2014)).

56. By its terms, MC §54.0110 appears to apply to every person who places any object on public property at any time, for any length of time, always. It does not define any of its terms, nor does it specify how long an object must sit on the public right of way to be considered a violation. Nor does it specify a remedy or punishment. If a person has a house, he receives a courtesy letter. If not, he gets a jail cell and a stay-away order. A person of ordinary intelligence is left to wonder whether her conduct of placing an item on public property will be treated as a violation of the statute—violating the "certain and definite" requirement of Due Process. For example, parents of a child with a lemonade stand or selling Girl Scout cookies cannot look at the code to determine whether this conduct violates the law. Indeed, even an attorney well versed in property law might wonder. The definition

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

of "encroachment" in *Black's Law Dictionary* does not comport with San Diego's improperly-broad interpretation of the Code: *"[a]n encroachment upon a street or highway is a fixture, such as a wall or fence, which intrudes into or invades the highway or encloses a portion of it, diminishing its width or area, but without closing it to public travel."* This definition is not expansive enough to criminalize people living on the street for placing their belongings on public property. Defendants have distorted the law and criminalized the state of being homeless, in order to advance an illegal policy of "they just need to move."

57. MC §54.0110 bars a substantial amount of innocent conduct, and contains no legislative or administrative guidelines for its enforcement. It places in the citing or arresting officer the random discretion to determine whom to cite or arrest based on the officer's judgment of who, or what, that person is. It impermissibly and "necessarily entrusts lawmaking to the moment-to-moment judgment of the policeman on his beat."[15] Enforcement of MC §54.0110 is purely discretionary, which encourages arbitrary and discriminatory actions by police and prosecutors. Nothing stops officers from using arbitrary factors (like the quality of one's clothing, or the tidiness of one's appearance) to make enforcement decisions. Police use this unbridled discretion to selectively target San Diego's homeless population.

---

[15] *Kolender v. Lawson,* 461 U.S., at 360, 103 (1983).

COMPLAINT FOR INJ. & DECL. RELIEF FOR VIOLATIONS OF U.S. & CALIF. CONSTITUTIONS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

58. In *Desertrain v. Los Angeles*, the Ninth Circuit struck down an ordinance that prohibited using a vehicle "as living quarters either overnight, day-by-day, or otherwise," because the statute did not define "living quarters," or "otherwise." (*Id.* at 1156). In *Kolender v. Lawson*, the U.S. Supreme Court struck down a California statute requiring people loitering on the street to provide "credible and reliable" identification and to account for their presence when requested by a police officer, finding the law was unconstitutionally vague because it failed to clarify what was meant by "credible and reliable." As with the laws at issue in *Desertrain* and *Kolender*, MC §54.0110 is impermissibly vague because it contains no defined terms, nor is there any guidance as to when placing an object on public property is to be adjudged a violation.

59. The Supreme Court struck down a Jacksonville ordinance banning "night walking" because it banned activities that are normally innocent. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 163 (1972). Like the flawed ordinance in *Papachristou*, MC §54.0110 is broad enough to ban many normal daily activities. For example, many people routinely set down shopping bags, picnic blankets, themselves, or other objects on sidewalks and/or public parks. Under MC §54.0110, as written and as enforced, these activities are criminal.

60. MC §54.0110 was never intended by City Council to be used against people living on the street, and homelessness stakeholders were never put on notice of this use of the law, nor was the public afforded an opportunity to raise policy concerns.

61. Further, the expansive "stay away" orders sought as a condition of release from jail to individuals arrested for MC §54.0110 violate due process by barring constitutionally protected conduct of being on a public street or sidewalk.

## FOURTH CLAIM FOR RELIEF
### Violation of Equal Protection Under the United States and California Constitutions

62. Plaintiffs incorporate the allegations contained in paragraphs 1-43 above.

63. The 14th Amendment of the United States Constitution, and Article 1, §7 of the California Constitution, require equal treatment of persons similarly situated.

64. Rather than applying MC §54.0110 evenhandedly to all people, Defendants actively and selectively target people who are homeless, citing and arresting them. In contrast, enforcement of MC §54.0110 against housed residents and businesses is relaxed. Housed residents or business owners are rarely if ever arrested for violating it. Defendants also apply harsher penalties to people who are unhoused. Defendants' purposeful and intentional singling-out people who are homeless for harsher enforcement of MC §54.0110 violates Equal Protection.

65. Unless a law targets a suspect class like race and gender, it is only subject to rational basis review (law must be rationally related to legitimate government interest).[16] Targeting a politically powerless or unpopular group (eg: people who are homeless) can never constitute a *legitimate* governmental interest. *Id.*

---

[16] See, *U.S. Dept. of Agriculture v. Moreno*, 413 U.S. 528, 313 (1973)

COMPLAINT FOR INJ. & DECL. RELIEF FOR VIOLATIONS OF U.S. & CALIF. CONSTITUTIONS

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

## FIFTH CLAIM FOR RELIEF
### Violation of Right to Travel

66. Plaintiffs incorporate the allegations contained in paragraphs 1-43 above.

67. Defendants pressure "stay away" orders to people who are homeless in exchange for release from jail after arrests for violation of MC §54.0110. These orders prohibit individuals from traveling within a certain distance of the incident of arrest. When the orders are violated, additional arrests and "stay away" orders compound and restrict travel in the City—sometimes barring access to vital services.

68. The right to travel is protected by Article I, §7 and §24 of the California Constitution. Both intrastate and intra-municipal travel are recognized as basic human and personal liberty rights, fundamental to democratic society.[17]

69. Defendants' use of "stay away" orders goes beyond the nature of the offense of "encroachment." Rather than prevent future violations of the "crime," such orders bar access to areas where services are located that <u>can</u> prevent future violations. This restriction on freedom of movement violates Plaintiffs' rights to travel.

## SIXTH CLAIM FOR RELIEF
### Unreasonable Search and Seizure

70. Plaintiffs incorporate the allegations contained in paragraphs 1-43 above.

71. The U.S. Constitution's 4th Amendment and Article I, §13 of the California Constitution protect the right to be free from unreasonable search and seizure.

---

[17] *Tobe v. City of Santa Ana*, 9 Cal. 4th 1069, 1100 (1995).

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

72. Defendants routinely search, arrest, and seize property from Plaintiffs under the MC § 54.0110, in violation of the laws and the settlement and Court Order in *Isaiah Project v. City of San Diego, USDC Case No. 09 CV 2699 BTM (WVG)*.

73. MC §54.0110 is so grossly and flagrantly unconstitutional that a person of reasonable prudence would be bound to see the flaws in the statute, and therefore it cannot serve as a valid basis for a search, seizure, or arrest.

74. In *Howard v. State*[18], the court found that a Fourth Amendment claim to suppress evidence applied to a defendant who was arrested under an ordinance later found to be "flagrantly unconstitutional" because police officers on the beat were charged with interpreting the law's meaning and deciding its scope.[19]

75. MC §54.0110 is so vague that its interpretation and scope must necessarily be, and is, randomly decided by officers on the beat.

76. In *State v. White*[20], the court found that an ordinance was "grossly and flagrantly constitutional," and not a valid basis for arrest, where other similar ordinances had been struck down on constitutional grounds.[21]

---

[18] *Howard v. State*, 617 S.W.2d 191 (Tex.Crim.App.1979)

[19] The ordinance in question made it unlawful "for any person within the city to be in the nighttime in or about public or private buildings or premises, where he has no right or permission to be, under suspicious circumstances, and without being able to give a satisfactory account of same."

[20] 97 Wash.2d 92, 640 P.2d 1061 (1982)

[21] That statute made it a misdemeanor to "obstruct a public servant" by failing "without lawful excuse" to provide true information "lawfully required" by a "public servant." Similar laws had been found to be void for vagueness.

COMPLAINT FOR INJ. & DECL. RELIEF FOR VIOLATIONS OF U.S. & CALIF. CONSTITUTIONS

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

77. Defendants should be on notice of the unconstitutionality of MC §54.0110 because the United States released a 2015 Statement of Interest[22] explaining that laws like MC §54.0110 that make compliance impossible for people experiencing homeless are violative the Eighth Amendment[23].

78. Because MC §54.0110 is grossly and flagrantly unconstitutional, Defendants' searches, seizures, and arrests under it violate Plaintiffs' protection against unreasonable searches and seizures.

## SEVENTH CLAIM FOR RELIEF
### Violation of California Civil Code §52.1 "Bane Act"

79. Plaintiffs incorporate the allegations contained in paragraphs 1-43 above.

80. California Civil Code §52.1, also known as the "Bane Act," provides a cause of action to an individual whose exercise or enjoyment of rights secured by the United States or California Constitutions or laws, has been interfered with, or attempted to be interfered with by threat, intimidation, or coercion.

81. Defendants have threatened, and continue to threaten, Plaintiffs with citations and arrests under MC §54.0110, criminalizing conduct that is the involuntary result of Plaintiffs' homeless status—in violation of Plaintiffs' Constitutional rights, and use the statute to coerce compliance with their "move, just move" policy.

---

[22] *Statement of Interest of the United States in Bell v. City of Boise*, 834 F.Supp.2d 1103, filed August 6, 2015, available at: https://www.justice.gov/crt/file/761211/download

[23] See, *Jones v. City of Los Angeles*, 444 F.3d 1118, 9th Cir.(Cal.) (2007).

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

# EIGHTH CLAIM FOR RELIEF
**Declaratory Relief**

82. Plaintiffs incorporate the allegations contained in paragraphs 1-43 above.

83. An actual controversy exists between Plaintiffs on the one hand, and Defendants on the other, as to whether Defendants have violated 42 U.S.C. §1983 by inflicting cruel and unusual punishment upon Plaintiffs by punishing their homeless status by citing, arresting, pressuring and obtaining "stay away" orders, and otherwise punishing Plaintiffs pursuant to MC §54.0110. In addition, an actual controversy exists between Plaintiffs on the one hand, and Defendants on the other, as to whether Defendants, in doing the acts alleged herein, have violated Plaintiffs' United States and California Constitutional rights—including Equal Protection, Due Process, the right to travel, and to be free of unreasonable search and seizure.

84. Code of Civil Procedure §1060 provides that a person who desires a declaration of his rights or duties with respect to another may seek such a declaration.

85. Plaintiffs are and represent persons desiring a declaration of their rights and duties with respect to Defendants, within the meaning of Code of Civil Procedure §1060 because, among other reasons, Plaintiffs are, and represent the interests of, homeless residents and taxpayers directly affected by Defendants' actions.

86. Plaintiffs desire a judicial determination of the rights and duties of Defendants, and of their compliance or non-compliance with 42 U.S.C §1983, and whether Defendants have abridged or violated Plaintiffs' United States and

California Constitutional rights. Such declaration is necessary and appropriate at this time in order that Defendants can comply with their duties, and so that the rights, health and safety of Plaintiffs, class members and the public can be protected.

### NINTH CLAIM FOR RELIEF
**Injunctive Relief - CCP §§526(a) & 527**

87. Plaintiffs incorporate the allegations contained in paragraphs 1-43 above.

88. As Class Members, injunctive relief is available to Plaintiffs pursuant to Code of Civil Procedure §§526(a) and 527 prior to class certification.

89. Unless and until Defendants are enjoined by order of this Court from failing to comply with their obligations under the law, and enjoined from issuing citations pursuant to MC §54.0110 in violation of Plaintiffs' Constitutional rights, and until Defendants are commanded to comply with their obligations to refrain from issuing such citations unless and until an alternative is available to Plaintiffs as set forth above, Plaintiffs are suffering and will suffer great and irreparable injury including:

a. They will be deprived of rights under Federal and State law;

b. They will suffer injury which cannot adequately be remedied by money;

c. They will suffer injuries which will be difficult or impossible to quantify; and

d. The important rights protected by the California and United States Constitutions may be forever compromised and lost.

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

COMPLAINT FOR INJ. & DECL. RELIEF FOR VIOLATIONS OF U.S. & CALIF. CONSTITUTIONS

## **PRAYER FOR RELIEF**

Accordingly, Plaintiffs request judgment as follows:

1. For a declaration that Defendants have violated Plaintiffs' rights by inflicting cruel and unusual punishment and unlawful search and seizure upon them by arresting and citing them under MC §54.0110 in violation of 42 U.S.C. § 1983;

2. For a declaration that Defendants have violated and continue to violate Plaintiffs' State and Federal Constitutional rights of Due Process by enforcing the impermissibly vague language of MC §54.0110;

3. For a declaration that Defendants have violated and will violate Plaintiffs' State and Federal Constitutional rights to Equal Protection under law by enforcing MC §54.0110 against them and subjecting them to harsher punishment under it;

4. For a declaration that Defendants have violated and continue to violate Plaintiffs' State and Federal Constitutional right to travel by issuing "stay away" orders as a condition of release from jail for violating MC §54.0110;

5. For an injunction enjoining Defendants and their agents, servants, and employees, and all other persons acting under and concert with or for them, from enforcing San Diego Municipal Code §54.0110 against Plaintiffs, the Class, and all other people who are homeless, unless and until Defendants identify an alternative location for Class Members to place their belongings, and thereby refrain from violating these people's 42 U.S.C. §1983 and State and Federal Constitutional rights;

COMPLAINT FOR INJ. & DECL. RELIEF FOR VIOLATIONS OF U.S. & CALIF. CONSTITUTIONS

6. Injunctive relief preventing Defendants from offering, using, or seeking "stay away" orders in conjunction with arrests or citations under MC §54.0110;

7. Injunctive relief requiring Defendants to drop all pending charges, court cases, "stay away" orders, fines, and warrants against Class Members for past violations of MC §54.0110, unless the City of San Diego can prove that the individual(s) charged had an alternative location to place their belongings at the time of the violation;

8. For Plaintiffs' attorneys fees and costs of suit incurred as provided by Gov. Code §800 and Code of Civil Procedure §1021.5 and as otherwise provided by law;

9. General damages in amount according to proof; and

10. Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

Dated: July 14, 2017

**DREHER LAW FIRM**

By: _____

Robert Scott Dreher

and

By: _____

Catherine E. Rogers

COMPLAINT FOR INJ. & DECL. RELIEF FOR VIOLATIONS OF U.S. & CALIF. CONSTITUTIONS