1
2
3
4
5

**DREHER LAW FIRM**
Robert Scott Dreher, Esq. (CSB #120527)
Catherine E. Rogers, Esq. (CSB #315607)
350 West Ash, Suite 101,
San Diego, California 92101
Phone: (619) 230-8828
Email: *scott@dreherlawfirm.com*

6

Attorneys for Plaintiffs.

7

8
9

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

*(left margin, vertical text)* DREHER LAW FIRM    350 W. ASH STREET SUITE 101    SAN DIEGO, CA 92101

| | |
|---|---|
| ERIC ARUNDEL, OWEN BOYER, JEFF HAYES, ROBERT KELSEY, ALEXIS LEFTRIDGE, RICHARD MELVIN, MICHAEL SANDERS, DEBRA SMITH, RICHARD STEVEN-SON, and SHERI PASANEN, on behalf of themselves and all others similarly situated, <br><br>           Plaintiffs, <br><br> v. <br><br> THE CITY OF SAN DIEGO and DOES 1 - 20, <br><br>           Defendants. <br> _____ | **Case No.  17-CV-01433-BEN-BLM** <br><br> **CLASS ACTION** <br><br> **AMENDED COMPLAINT FOR INJUNCTIVE and DECLARATORY RELIEF AGAINST VIOLATIONS OF THE FOURTH, EIGHTH & FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION UNDER COLOR OF AUTHORITY (42 U.S.C. §1983), and OF THE CONSTITUTION and LAWS OF THE STATE OF CALIFORNIA.** <br><br> **JURY TRIAL DEMANDED** <br><br> <u>Action Filed: July 17, 2017</u> <br><br> Related Case to: <br> <u>*Spencer v. City of San Diego*</u>, USDC Case No. 04 CV 2314 BEN (WVG); *and* <br> <u>*Isaiah Project v. City of San Diego*</u>, USDC Case No. 09 CV 2699 BTM (WVG) |

**INTRODUCTION**

While many other cities are making substantive attempts to solve the growing issue of homelessness, San Diego has doubled-down on criminalization of homeless people as a primary method of addressing the issue. *"They need to move away, just move, even if it's two blocks"* is, in word and deed, San Diego's homelessness enforcement policy.

The City's tool for doing so is Municipal Code §54.0110, "Unauthorized Encroachments Prohibited," a vague statute which ostensibly makes it illegal for *any person to place any object on public property*, even for a moment. Rather than adopting best practices recommended by the US Interagency Council on Homelessness and the National Alliance to End Homelessness, San Diego utilizes an unconstitutional barrage of jailings, tickets, fines, and stay-away orders to move people and their things "away."

People who live on the street do not have a choice about whether to comply with this law. Nobody can perpetually carry their belongings. We must, at some point, set ourselves and our things down. People who are homeless have nowhere to set themselves or their things except in a public place. San Diego has effectively made it a crime to be homeless.

Eric Arundel, an Army veteran suffering from pneumonia, was sitting in a folding chair one morning next to a sleeping bag and tarp he uses to keep warm when he was cited for "encroachment" by police.

It was just after 5:30 a.m. when Jeff Hayes was awakened by the sound of San Diego police officers unzipping his tent. He was weak from a recent round of hospital treatments for sepsis. After receiving a ticket for "encroachment," he packed up his tent and moved down the street.

Alexis Leftridge was pregnant and feeling sick early one morning when San Diego police ordered her out of her tent. She was arrested and cited for "encroachment" and jailed for several days. As an enticement to get out of jail, Defendants offered her the option of a stay-away order preventing her from going within 100 yards of the area where she was cited. She does her best to stay "away," but has nowhere else to go and now has several stay-away orders against her. She is afraid she will be arrested again for walking along the wrong street or for placing herself or her belongings anywhere.

This is an action for injunctive and declaratory relief under 42 U.S.C. §1983 and CCP §§1060, 526(a) and 527, asking the Court to order the City to stop enforcing MC §54.0110 against people who are homeless who have nowhere else to place themselves or their belongings other than in a public place, and to cease and desist from jailing them, and seeking, forcing, and obtaining stay-away orders against them, for violation of this inapplicable statute.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this cause of action pursuant to 28 U.S.C. §1343(a)(3) and 42 U.S.C. §1983. Supplemental jurisdiction over Plaintiffs' state

AMENDED COMPLAINT FOR INJUNCTIVE & DECLARATORY RELIEF

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

law claims is pursuant to 28 U.S.C. §1367. Jurisdiction supporting the claim for attorney fees is conferred by 42 U.S.C. §1988.

2.  Venue is proper in the Southern District of California because all Defendants reside in the District and all events giving rise to Plaintiffs' claims occurred in the District. The relief Plaintiffs seek is within this Court's power to grant.

## CLASS ACTION ALLEGATIONS

3.  Plaintiffs bring this action on their own behalves and on behalf of all other persons similarly situated. The Class of people that Plaintiffs represent consists of all those persons in the City of San Diego who: (1) have been the subject of citation(s), arrest(s), detention(s), warning(s), stay-away order(s), and/or other enforcement action(s) under MC §54.0110 within the Statute of Limitations for this action; and (2) were homeless at the time of enforcement action under MC §54.0110; and (3) had nowhere else to place their belongings except on public property at the time of their applicable enforcement action(s) under MC §54.0110.

4.  This action meets all four elements of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Additionally, this suit may be maintained as a Rule 23(b)(2) class action because Defendants have acted on grounds that apply generally to the Class, so that final injunctive and/or declaratory relief is appropriate respecting the Class as a whole.

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

DREHER LAW FIRM

350 W. ASH STREET SUITE 101

SAN DIEGO, CA 92101

5.   The members of the Class are so numerous that individual joinder of all members is impracticable.[1] The Class is comprised of hundreds (or even thousands) of individuals who are homeless in the City of San Diego, and who have faced enforcement action under MC §54.0110 for placing their belongings on public property. Joining all these individuals in this lawsuit is impractical and unnecessary.

6.   Questions of law and fact are common to the Class.[2] The claims asserted "depend upon a common contention of such a nature that it is capable of classwide resolution...".[3] Importantly, the Class is affected by a "general policy" on the part of the defendants.[4] The Class is united in its interests with respect to proof of Defendants' conduct, the alleged effects caused by Defendants' actions, and whether Defendants' actions violate their constitutional rights.

7.   Plaintiffs assert claims typical of the Class.[5] Class Representatives have the same essential characteristics as the Class, in that they are, or were, homeless at the time of their punishment under MC §54.0110, and they had nowhere else to place their belongings other than public property. The proposed Class is united in all of the factual questions underlying this case, including: whether there are insufficient

---

[1] Fed. R. Civ. P. 23(a)(1).

[2] FRCP 23(a)(2)

[3] *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541 (2011).

[4] *Id.* at 2553.

[5] Fed. R. Civ. P. 23(a)(3).

AMENDED COMPLAINT FOR INJUNCTIVE & DECLARATORY RELIEF

homeless shelters and storage facilities to accommodate the City's homeless population; whether some belongings (like blankets, tarps, medicine, etc.) qualify as "basic human needs" for people experiencing homelessness; whether Plaintiffs are capable of complying with San Diego Municipal Code §54.0110 as it is currently written and enforced; and whether Defendants have maintained a policy of systematically enforcing San Diego Municipal Code §54.0110 against the Class since approximately 2011. Any minor factual differences in Plaintiffs' respective circumstances are not legally significant to the constitutional claims asserted in this action and will not defeat typicality. There is no unusual treatment from the City that will defeat the typicality of Class Representatives' claims. Importantly, Class Representatives interests "align[] with the interests of the Class," and they have endured the same course of conduct directed against the Class.[6] Class Representatives seek injunctive and declaratory relief to protect the civil rights of the entire Class, and they seek no individual gain in the form of damages or individualized relief, nor do they assert any individualized claims that would disadvantage the Class.

8. Class Representatives will fairly and adequately represent the interests of the Class, and have no interests antagonistic to those of the Class.[7] Plaintiffs' interests are aligned with those of the Class Members, and all Class Members stand to benefit

---

[6] *Just Film, Inc. v. Buono. No.* 14-16132, WL, 13 (9th Cir. 2017).

[7] Fed.R.Civ.P. 23(a)(4).

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

from the declaratory and injunctive relief sought in this action. Plaintiffs have retained lawyers who are competent and experienced in class action litigation, who will zealously represent the interests of the Class, including absentee members. Plaintiffs' lawyers have discussed the responsibilities associated with this action with the Class Representatives. Class Representatives have agreed to represent the interests of the entire Class and are dedicated to taking an active role in this litigation. Class Representatives are committed to fulfilling their responsibilities to the best of their ability, and participating in all phases of this lawsuit—including meeting with counsel regularly, appearing for depositions, and participating as needed at trial.

9. Plaintiffs' Counsel are well-qualified under the factors of Fed. R. Civ. P. 23(g)(1)(A). Counsel have: (1) spent significant time identifying and investigating potential claims in this action, including interviewing Class Members, and investigating relevant facts and laws underlying this claim; (2) have successfully handled class action lawsuits and other complex litigation matters in the past, including the types of civil rights claims asserted in this action; (3) have extensive knowledge of applicable civil rights laws; and (4) are committed to spending the time and resources necessary to effectively represent the entire Class in this action.

10. This is the type of large-scale constitutional claim that falls exactly within the purview of Federal Rule of Civil Procedure 23(b)(2), allowing the Court to address a constitutional issue while providing access to justice to displaced and vulnerable people who would not otherwise be able to avail themselves of the judicial system.

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

The disposition of these claims in a class action will benefit the parties, the Courts, Defendants and all the citizens of the City of San Diego. The disposition of Plaintiffs' and proposed Class Members' claims in a class action will provide substantial benefits to both parties and the Court, allowing the Court to address a systemic issue in one class action, rather than having to address potentially hundreds of related civil rights actions individually.

11. Further, class treatment will permit the adjudication of claims by many Class Members who could not afford to individually litigate their claims or vindicate their rights against the government. There are no difficulties likely to be encountered in the management of this case which might preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this matter. This action will promote an orderly and expeditious administration and adjudication of the proposed class claims, economies of time, effort and resources will be fostered, and uniformity of decisions will be insured. Without a class action, Class Members will continue to suffer damages, and Defendants' violations of law will proceed without remedy.

12. The Class of people whom Plaintiffs represent is in need of the relief sought, as its members have been, are being, and will be damaged by Defendants' unconstitutional enforcement of MC §54.0110. The rights at stake are fundamental. Without class certification, the proposed Class will not have access to justice to address ongoing violations of their civil rights

## **PARTIES**

13. Plaintiff ERIC ARUNDEL was a resident of San Diego, and a homeless individual as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. §11301 et seq., inasmuch as he lacked fixed, regular and adequate nighttime residence. Defendants cited him nine times in the downtown area for encroachment for placing belongings on the sidewalk, such as a tarp, bedding, clothing, medication, and toiletries.[8] An Army veteran who served honorably from 1981-1985 as a mortar man in the U.S. and Korea, he lost much of his hearing due to repeated loud explosions. After his discharge, Mr. Arundel often worked two jobs to help support his mother who had Alzheimer's. Money troubles caused him to become homeless. First he stayed at St. Vincent DePaul Village, but left after another resident attacked him. He planned to attend the 2017 Veterans Stand Down event hoping to find housing, but passed away on October 14, 2017 from cancer. When he received citations, Mr. Arundel had nowhere to put his belongings but in public.

14. Plaintiff OWEN BOYER is a resident of San Diego, and is a homeless individual as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. §11301 et seq., as he lacks a fixed, regular and adequate nighttime residence. Defendants have cited Mr. Boyer at least four times for encroachment for placing personal items on the sidewalk.[9] On April 15, 2017, he was sitting on a

---

[8] Exhibit 1: Spreadsheet of Known MC §54.0110 Citations & Arrests.

[9] Exhibit 1: Spreadsheet of Known MC §54.0110 Citations & Arrests.

AMENDED COMPLAINT FOR INJUNCTIVE & DECLARATORY RELIEF

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

bench, in a public park near the trolley station at 1st and J Streets, when two police officers approached and told him to "move along." Although he voiced opposition to the officers' request, Mr. Boyer, who uses a cane or walker to move, nevertheless followed their command and began to walk away. But one of the police officers, evidently angered by Mr. Boyer's comments, pinned Mr. Boyer to the ground, hit him on the head, then put him in jail for five days without access to a judge. Mr. Boyer has been diagnosed with a psychological disability, and he plans to apply for disability benefits. He has attended trade school to learn computer drafting. He lived with his mother until she moved out of state to be with other family members. So now he sleeps on the streets and spends time at the library. On the dates of these events, he had nowhere to put his belongings but in public.

**Photo:** *Officers pinning down Owen Boyer during his arrest for encroachment.*



AMENDED COMPLAINT FOR INJUNCTIVE & DECLARATORY RELIEF

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

15. Plaintiff JEFF HAYES is a resident of San Diego, California. He is a homeless individual as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. §11301 et seq., inasmuch as he lacks a fixed, regular and adequate nighttime residence. On December 6, 2016, Defendants cited him pursuant to MC §54.0110 in the area of J Street, between 13th and 14th Streets. He was unable to pay his fine or show up to court after being hospitalized for sepsis later that month. Mr. Hayes is active in Voices of Our City Choir, a community singing group that raises awareness about homelessness. Prior to this incident, Mr. Hayes had no criminal record. He had a career in Internet Technology until he was unable to work due to deteriorating health caused by Multiple Sclerosis—which eventually led him to become homeless. When he received a citation for violating MC §54.0110 he had nowhere to put his belongings but in a public place.

16. Plaintiff ROBERT KELSEY is a resident of San Diego. He is a homeless individual as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. §11301 et seq., inasmuch as he lacks a fixed, regular and adequate nighttime residence. Defendants have cited Mr. Kelsey at least five times under MC §54.0110 for sleeping on the sidewalk with his belongings.[10] Defendants arrested him one morning a little after 5:30am for sleeping in his tent in the East Village area behind Saint Vincent DePaul Villages. Mr. Kelsey has HIV, and told his arresting

---

[10] Exhibit 1: Spreadsheet of Known MC §54.0110 Citations & Arrests.

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

officer that he needed to take his AZT medication, but the officer did not let him access the medicine bottle. Instead, he spent three days in jail without access to critical antiviral medication. He ended up living on the street because he was unable to find work, but he occasionally finds gigs as a temporary day laborer. When he received the above citations, and was arrested for violating MC §54.0110, he had nowhere to put his belongings but in a public place.

17. Plaintiff ALEXIS LEFTRIDGE is a resident of San Diego. She is a homeless individual as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. §11301 et seq., inasmuch as she lacks a fixed, regular and adequate nighttime residence. Defendants have cited and arrested her pursuant to MC §54.0110 at least fifteen times in the downtown area.[11] Defendants have never formally convicted Ms. Leftridge of violating this Code. Instead, Defendants pressured her to accept stay-away orders as a condition of release (pretrial and pre-conviction), from custody in jail. Ms. Leftridge worked as a Certified Nursing Assistant until she lost her job in September of 2014. With no money for rent, she was evicted from her apartment and slept on the street for the first time at age twenty. Scared and alone, she slept outside near Civic Center Plaza. Police woke her and drove her to Rachel's House, a women's shelter where she entered a raffle drawing for a shelter bed. She didn't win the raffle. For the next several months, she stayed

[11] *Id.*

briefly at the Rescue Mission and on various friends' couches. When her shelter options ran out, she began living in a tent near others who were homeless downtown, in an effort to seek safety, protection and company. Ms. Leftridge's aunt and uncle also sleep in a tent, and she is close to her family and friends living on the street, whom she calls "street sisters." While on the street, she met her fiancé, who is also homeless. The pair have been together for two years, and Alexis gave birth to a baby boy in April of 2017. She and her son now have a room at Saint Vincent DePaul's Village, though her fiancé still lives on the street (no shelter will accept all three together). She works hard to be a good mother, and her fiancé is active in their son's life. She is now working to get her "guard card," and plans to pursue work as a private security guard. On the dates she received encroachment citations, Ms. Leftridge had nowhere to put her belongings other than a public place, and she is continually at risk of violating a stay-away order when utilizing services at St. Vincent's.

18. Plaintiff RICHARD MELVIN is a resident of San Diego. He is a homeless individual as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. §11301 et seq., inasmuch as he lacks a fixed, regular and adequate nighttime residence. On November 16, 2016, Defendants cited Mr. Melvin for encroachment for sleeping in a tent near Imperial Ave. and 12th Street. At approximately 5:45 a.m., police approached his tent yelling, "anyone in the tent – come out with your hands up!" Mr. Melvin unzipped his tent and did so, and saw

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

two police cars and four police officers. They asked him why he was sleeping there in a tent, and he informed them that he had nowhere else to go. He is a US Army veteran with an honorable discharge, and has had various jobs over the years including police officer and firefighter. He suffers from a seizure disorder and was recently treated at UCSD Medical Center, and has been homeless since he and his girlfriend were evicted from their apartment. He has written a book entitled "My Life as a Poet,"[12] and he participates in the Voices of Our City Choir. On the date of this incident, he had nowhere to put his belongings but in public.

19. Plaintiff MICHAEL SANDERS is a resident of San Diego. He is a homeless individual as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. §11301 et seq., inasmuch as he lacks a fixed, regular and adequate nighttime residence. Defendants have cited Mr. Sanders at least seven times for encroachment for placing his belongings on public property—which include a chair,

---

[12] *THREE ANGELS*

*Three Angels happened too befriended me when I was close too death you see...*

*It was their love that came straight away too save me....*

*Be it right or be it wrong, they've made it possible for me to go on......*

*So from here on out in life all the unconditional love I give to other you see...*

*Come from the love those Angels showed me.....*

*(© Richard Melvin)*

bedding, and a tarp.[13] Mr. Sanders was a consultant and business manager, but money troubles led him to become homeless. He has not been able to find another job and now sleeps on the street near others downtown, frequently spending time at the library. He has nowhere to put himself or his belongings but in public.

20. Plaintiff DEBRA SMITH is a SAN DIEGO resident. She is a homeless individual as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. §11301 et seq., inasmuch as she lacks a fixed, regular and adequate nighttime residence. Defendants have cited Ms. Smith at least three times for encroachment for placing her belongings, including her bedding, clothing, and a chair, on public property near the intersection of 15th Street and Island Ave.[14] The citing officer told Ms. Smith he was citing her in order to get her to "move away" from other individuals the officer thought were a bad influence on her. She did not want to move away from her friends, but ultimately she moved down the street to avoid getting more tickets.[15] Ms. Smith worked as an accountant for 25 years, and she has one daughter and a grandson who live in another state. Prior to becoming homeless, she had a brain aneurism that required five open-skull surgeries. She is now disabled and takes multiple medications daily for several health conditions. She

---

[13] Exhibit 1: Spreadsheet of Known MC §54.0110 Citations & Arrests.

[14] *Id.*

[15] While the citing police officer was clearly well-intentioned, this incident underscores the arbitrary nature of the language, application, and enforcement of, MC §54.0110. The Code's vague wording requires officers on the beat to interpret the statute, its use, breadth, and application.

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

has been homeless for approximately a year and a half after her roommate of ten years abruptly moved to Missouri. She could not afford rent and was unable to find another room on her limited budget, but was able to stay with a friend for five months. In March of 2016 she began living on the street in a sleeping bag downtown near others who made her feel safe. While living on the street, she has had her belongings taken on numerous occasions—including her purse, backpack, cell phones, etc. As a result, she lost her encroachment citations and missed court dates. When she received the citations, she had nowhere to put her belongings other than in a public place.

21. Plaintiff RICHARD STEVENSON is a resident of San Diego, California. He is a homeless individual as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. §11301 et seq., inasmuch as he lacks a fixed, regular and adequate nighttime residence. Defendants have cited Mr. Stevenson at least five times for encroachment.[16] He ended up living on the street in San Diego after leaving the Bay Area due to personal family trauma. Prior to being homeless, he worked in shipping and receiving, and he was also a seasonal firefighter. He is disabled due to injuries resulting from a car accident, as well as Multiple Sclerosis which requires daily injections. On the dates of these alleged violations, he had nowhere to put his belongings but in public.

---

[16] *Id.*

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

22. Plaintiff SHERI PASANEN is a resident of San Diego, California. She is a homeless individual as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. §11301 et seq., inasmuch as she lacks a fixed, regular and adequate nighttime residence. She spent 30 years working in non-profit social services, and is now retired due to disability, which caused her to end up living on the street. Defendants cited Ms. Pasanen per MC §54.0110 for placing a 5-inch camping stove on the sidewalk to heat up her morning coffee.[17] She took a bus to court for her arraignment, but got sick and missed a subsequent hearing. Defendants issued a warrant for her arrest, that she later had recalled and a new date set. When she received the citation, she had nowhere to put her belongings but a public place.

23. The CLASS is comprised of hundreds of individuals who are homeless in San Diego, and who, according to Defendants, are committing a crime every time they place their belongings on public property, even for a moment, and who therefore face the prospect of arrest, citation, jail, trial, conviction, stay-away order(s), and punishment under MC §54.0110.

24. Defendant CITY OF SAN DIEGO is a municipal corporation organized, acting, and existing under the laws of California which, through its agents, including the San Diego Police Department, arrests, cites, detains, issues stay-away orders, and otherwise punishes people pursuant to MC §54.0110.

---

[17] *Id.*

25. Plaintiffs are informed and believe that the Defendants sued herein as DOE DEFENDANTS 1 - 20 were officers, employees, and agents of the other Defendants, who aided, abetted, assisted, and/or otherwise helped plan, organize, orchestrate or carry out the actions alleged here. Plaintiffs are ignorant of the true names and capacities of the Defendants sued herein as DOES 1 - 20 and therefore sue those Defendants by fictitious names. Plaintiffs will seek leave of court to amend this complaint to allege their true names when ascertained. Plaintiffs are informed and believe, and thereon allege, that each of these actors is liable for, and caused, the injuries and constitutional rights violations and violations of law alleged herein.

/ / /

/ / /

/ / /

AMENDED COMPLAINT FOR INJUNCTIVE & DECLARATORY RELIEF

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

## FACTS

26. The San Diego City Council did not design or intend for Municipal Code §54.0110 ("Unauthorized Encroachments Prohibited") [18] to be used against people living on the street. It is an obscure ordinance intended to address trash cans and dumpsters left on the sidewalks too long after trash pickup. The City's Environmental Services Department recommended MC §54.0110's adoption, and an October 18, 2007 Authorizing Ordinance reveals that it was intended to address "unauthorized solid waste or recycling dumpsters and bins discovered in the public right-of-way or on public property." [19] No community participation took place before MC §54.0110's enactment, and there was no public discussion or written record giving notice of, or of any desire whatsoever for, the its use against people who are homeless. It was intended as a minor remedy akin to a parking ticket with no serious ramifications. Indeed, when MC §54.0110 is used as intended, an owner of trash cans left too long on a sidewalk receives a courtesy notice from the City politely asking that the trash cans be moved.

27. The Defendants seized upon MC §54.0110, years after it was adopted, as a tool to target people who are homeless, in contravention of the City Council's intent

---

[18] MC §54.0110 "*Unauthorized Encroachments Prohibited*" reads: "[i]t is unlawful for any person to erect, place, allow to remain, construct, establish, plant, or maintain any vegetation or object on any public street, alley, sidewalk, highway, or other public property or public right-of-way, except as otherwise provided by this Code." Added 10-18-2007 by O-19670 N.S.; effective 11-17-2007.

[19] San Diego City Council Ordinance 19670, October 18, 2007, available at: http://docs.sandiego.gov/council_reso_ordinance/rao2007/O-19670.pdf

AMENDED COMPLAINT FOR INJUNCTIVE & DECLARATORY RELIEF

when enacting the statute. It is now the Defendants' primary basis for dealing with people living on the street — arresting them, citing them, jailing them, fining them, and issuing stay-away orders, and otherwise punishing people for placing themselves and their objects in public, and the statistics show its use to have skyrocketed in recent months and years, with an 83% spike this past September.[20] In contrast, police rarely if ever enforce MC §54.0110 against housed residents (e.g., a residence whose trash cans remain on the sidewalk all day, a lawyer who sets her briefcase on the sidewalk to take a phone call, a couple using a picnic blanket in a park, or a restaurant which puts too many umbrellas or signs onto the sidewalk).

28. The number of MC §54.0110 citations rose six-fold (to 1,600 citations) between 2010 and 2014, primarily if not solely due to enforcement against people who are homeless.[21]

29. Several years ago, the Defendants hit upon the notion of using MC §54.0110 to circumvent the requirements and obligations in the settlement agreement (and resulting Court order) it reached with homeless advocates in *Spencer v. City of San*

---

[20] Lisa Halverstadt, *Homeless Enforcement Explodes Amid Hep A Response in San Diego*, Voice of San Diego, Oct. 24, 2017, available at: http://www.publicceo.com/2017/10/homeless-enforcement-explodes-amid-hep-a-response-in-san-diego/

[21] Kelly Davis, *Law Intended to Address Trash Dumpsters Is Increasingly Being Used on the Homeless*, Voice of San Diego, Aug. 15, 2016, available at: https://www.voiceofsandiego.org/topics/public-safety/law-intended-to-address-wayward-trash-dumpsters-is-increasingly-being-used-on-the-homeless/

AMENDED COMPLAINT FOR INJUNCTIVE & DECLARATORY RELIEF

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

*Diego*.[22] That Agreement and Order limited the City's enforcement of the state's "illegal lodging" statute.[23] The City now instead charges people who are homeless with violating MC §54.0110 in cases where illegal lodging violations are no longer an option due to the *Spencer* settlement agreement.[24]

30. Former Police Sergeant and head of the SDPD's Homeless Outreach Team Rick Schnell has confirmed that the City of San Diego made a deliberate policy decision in approximately 2011 to use MC §54.0110 to address homelessness, following the *Spencer* settlement agreement. In a 2015 UC Berkeley Publication, Schnell stated that several years after the terms of the settlement agreement took effect, the San Diego Police Department identified Section 54.0110 as a potential enforcement tool against homeless people.[25]  He stated that the SDPD "figure[d] that

---

[22] The City is also violating its 2011 settlement agreement and Court order in *Isaiah Project v. City of San Diego*, wherein the City agreed to establish and comply with new policies and procedures for the collection, removal and storage of personal property found on city streets and property *USDC Case No. 09 CV 2699 BTM (WVG) (See, Facebook "Homelessness News San Diego"* social media account).

[23] The settlement agreement and Court order in *Spencer* suspended the City's enforcement of Penal Code Section 647(j/e) between the hours of 9:00pm and 5:30am. *USDC Case No. 04 CV 2314 BEN (WMC).*

[24] The City is also violating its 2011 settlement agreement and Court order in *Isaiah Project v. City of San Diego*, wherein the City agreed to establish and comply with new policies and procedures for the collection, removal and storage of personal property found on city streets and property *USDC Case No. 09 CV 2699 BTM (WVG) (See, Facebook "Homelessness News San Diego"* social media account).

[25] UC Berkeley Law, Policy Advocacy Clinic, *California's New Vagrancy Laws*, at p. 26 (Feb., 2015). Available at: http://www.cohsf.org/wp-content/uploads/2014/08/New-Vagrancy-Laws-20150212-final-v5.3-1.pdf

AMENDED COMPLAINT FOR INJUNCTIVE & DECLARATORY RELIEF

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

new section out, [got] it cleared through the City Attorney" on a legal basis, and began using it to cite homeless people.[26]

31. The vague language of MC §54.0110 makes it illegal for *any person to place any object on public property*. It contains no defined terms, and no legislative guidelines for enforcement. There are no time limits or requirements specified; no identification of types of objects; no provision for whether access is otherwise available or blocked. On its face, it can apply to anything or anyone anywhere at any time for any length of time. There are no guidelines for the exercise of judgment in carrying it out, and no uniformity in the acts of doing so. Its use is subject to whims and moods. A person of ordinary intelligence is left to wonder whether innocent conduct of placing an object in public will be deemed criminal, and indeed, depending upon the mood of the Defendants, it can be. Defendants' only real criteria seems to be whether a person is housed or unhoused. If the person is housed, they receive a nice letter. If not, they are cited, jailed, fined, threatened, and ordered to 'stay away.' The statute has effectively been stretched by Defendants to make illegal the placement of anyone, anywhere, anytime.

32. Most people living on the street, including Plaintiffs, are not homeless by choice. The most common reported causes of homelessness in San Diego are: abuse/violence, disability, being kicked out/running away, loss of a family member,

---

[26] *Id.*

loss of a job, and money issues.[27] San Diego's homeless population of 5,619 is greater than the number of shelter beds available (2,688).[28]

33. Since initially filing this complaint, the City has erected temporary homeless shelter tents to house approximately 700 people.[29] However, even with these additional temporary shelters, the number of unsheltered people experiencing homelessness is in the thousands.

34. San Diego's homeless population of 5,619 also is greater than the number of free transitional storage units (304 lockers/ 90 bins).[30] The City's only free Transitional Storage Center (TSC), run by the non-profit Think Dignity, is currently at full capacity with a waiting list. The annual cost to operate the TSC is approximately $120,000. The TSC can serve less than 10% of San Diego's homeless population. Rather than investing in more facilities like the TSC to provide more storage options to address the issue, Defendants hired a public relations operative in 2016, at an annual salary of $175,000.[31] She lasted seven months, during which

---

[27] *2017 Homelessness Summary Fact Sheet,* San Diego County Regional Task Force on the Homeless (RTFH).

[28] Figure obtained from the RTFH's *2017 Housing Inventory Count* by adding the number of temporary and emergency shelter beds in the City of San Diego, including beds for people with mental health needs.

[29] Gary Warth, *Dispute Erupts Over Funding for Temporary Homeless Shelter*, San Diego Union Trib., November 3, 2017, available at: http://www.sandiegouniontribune.com/news/homelessness/sd-me-tent-funding-20171103-story.html

[30] Information and figures regarding the TSC provided by Think Dignity.

[31] *San Diego Homeless Czar Gone After Seven Months*, San Diego Union Trib., May 9, 2017, available at: http://www.sandiegouniontribune.com/news/politics/sd-me-homeless-czar-

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

Defendants did nothing other than issue more "encroachment" citations and redouble their efforts to criminalize people living on the street, while ignoring the fact that the cost of doing so far exceeds the cost of providing permanent supportive shelter.[32]

35. Due to lack of shelter or storage options in San Diego, people living on the street have no alternative but to place their belongings—including those necessary for health, hygiene, safety—in a public place. As a result, placing oneself or one's possessions on public property is an involuntary and unavoidable result of being homeless. People who are homeless cannot avoid violating MC §54.0110.

36. Living on the street can be deadly. In the fiscal year ending September 30, 2016, 117 unsheltered people died on San Diego's streets, double the number from two years ago.[33]

37. Belongings like blankets, clothing, snacks, hygiene products, tarps, medicine, etc.—as well as bags, backpacks, or carts to carry personal belongings—are necessary for health and wellbeing of individuals living on the street.

38. Placing or sheltering oneself somewhere is not voluntary conduct. Unprotected exposure to cold and rain can pose serious health risks.[34] Some people

20170509-story.html

[32] A 2004 Lewin Group report demonstrated that, in nine U.S. cities, the cost of jailing people living on the street was two to three times more expensive than the cost of providing permanent supportive housing or shelter.

[33] Daniel Wheaton, *Homeless Deaths Have Doubled Over Two Years*, San Diego Union Trib. (Nov. 28, 2016).

[34] People experiencing homelessness are some of the most frequent victims of hypothermia, a potentially deadly condition in which the body's temperature drops

living on the street use tents or tarps to escape harsh weather and pests, and/or to get a modicum of privacy and dignity. Such shelters also provide warmth, safety, security, and a space for rest, all of which are defined as "basic human needs" by psychologist Abraham Maslow, who studied the "hierarchy of needs" among human beings.

39. In 2017 San Diego experienced a Hepatitis A epidemic, which killed 20 people and afflicted over 550.[35] This epidemic highlights the vulnerability of the region's homeless population, which accounted for most of the reported cases.[36] The disease is spread by ingesting contaminated feces, and experts say that a lack of public restrooms may have been a cause of the epidemic.[37] The County has distributed more than 2,400 "hygiene kits" to individuals experiencing homelessness—which include water, sanitizing supplies, and bags (to be used to

---

below 95°F. Jane E. Brody, *New York Times*, *Surviving the Cold, or Even the Not So Cold*, Jan. 9, 2007. Temperatures need not be freezing for hypothermia to occur. *Id.* Most cases occur in air temperatures of 30-50°F, and can even occur due to overexposure at 60-70°F. *Id.* According to US Climate Data, the average low temperature in San Diego in December was 48°F, with an average of 6 inches of precipitation.

[35] San Diego County Health and Human Services Agency website, at: *http://www.sandiegocounty.gov/content/sdc/hhsa/programs/phs/community_epidemiology/dc/Hepatitis_A.html*

[36] *Local Public Health Emergency for Hepatitis A*, County News Center, at: https://www.countynewscenter.com/local-public-health-emergency-for-hepatitis-a-outbreak-ratified-by-board-of-supervisors/

[37] Lisa Halverstadt, *Public Restrooms in East Village Remain Locked Despite Hepatitis Outbreak*, Voice of San Diego, August 17, 2017, available at: https://www.voiceofsandiego.org/topics/government/public-restrooms-in-east-village-remain-locked-despite-hepatitis-outbreak/

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

AMENDED COMPLAINT FOR INJUNCTIVE & DECLARATORY RELIEF

clean up feces).[38] In so doing, the County has acknowledged that some hygiene-related belongings are essential to life on the street.

40. After people living on the street are arrested and jailed and/or charged under MC §54.0110, they are, as standard practice, pressured by Defendants to sign stay-away orders in exchange for release from jail or the dismissal of charges and expensive fines and fees. These broad orders prohibit individuals from going within a certain distance—often 100 yards—of the incident of arrest. stay-away orders can lead to more arrests when violated. When these orders compound, individuals are barred from large areas of the City, which often include streets where there are vital homeless resources—including medical centers, food distributions, faith-based activities, temporary shelters, rehabilitation groups, and other services. For example, in the square block from Market to Imperial on 16th and 17th Streets, there are four homeless services providers—including God's Extended Hand, Saint Vincent DePaul Villages, Alpha Project's Neil Good Day Center, the Transitional Storage Center, various food distributions, and a daily distribution of water bottles to people living on the street. Stay-away orders barring access to these areas prohibit individuals from accessing necessities like food and water, or seeking the very shelter that would let them avoid violating MC §54.0110.

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

---

[38] *Id.*

AMENDED COMPLAINT FOR INJUNCTIVE & DECLARATORY RELIEF

41. Citations for violation of MC §54.0110 are set for hearing and trial in the Clairemont Mesa Courthouse. This procedure is known by Defendants to be as difficult as possible for Plaintiffs and the Class Members to contest these citations. People living downtown on the street cannot easily get to Clairemont, because they often can't afford transportation, and/or, even if they can afford it, the MTS bus rules do not allow them to bring their belongings on the bus – thus, they risk violating the very law whose citations they wish to contest, by attempting to contest the citations. Further, most people experiencing homelessness have no calendar system, and their belongings (including the initial citation) are frequently stolen, destroyed, or lost. As a result, they often inadvertently miss court hearings.

42. By forcing people living on the street into the criminal justice system under MC §54.0110, the City is clogging the court system, wasting public resources, undermining any prospect of limiting or reversing homelessness, and perpetuating a vicious cycle of warrants, fines, arrests, and stay-away orders—which makes it more difficult for people to get out of homelessness. Further, by using MC §54.0110 to punish the act of placing one's belongings in public, or sheltering oneself, the City is effectively making it a crime to be homelessness.

43. Since the original Complaint was initially filed in this case, and in the wake of the Hepatitis A epidemic in San Diego, enforcement of MC §54.0110 has "exploded" and has "disproportionately afflicted those living on the street," in the

words of a local media reports.[39] Enforcement was up three-fold as compared to enforcement in the same month the year earlier.[40]

### FIRST CLAIM FOR RELIEF
**Violation of 42 U.S.C. §1983**

44. Plaintiffs incorporate the allegations in paragraphs 1-43 above.

45. 42 U.S.C. §1983 provides that, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…".

46. Defendants' actions violate Plaintiffs' civil and constitutional rights, including, but not limited to, Plaintiffs' rights under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, and Article 1, §7, Article 1, §15; and Article 1, §17 of the California Constitution.

47. Defendants are acting under color of authority, in their official capacities as representatives of the City of San Diego.

---

[39] Lisa Halverstadt, *Homeless Enforcement Explodes Amid Hep A Response*, Voice of San Diego, October 20, 2017, available at: https://www.voiceofsandiego.org/topics/public-safety/homeless-enforcement-explodes-amid-hepatitis-outbreak/

[40] *Id.*

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

48. Plaintiffs' claims fall within the purview of 42 U.S.C. §1983 as clarified by *Monell v. Department of Social Services* because Plaintiffs seek injunctive and declaratory relief to stop an unconstitutional governmental "policy" or "custom."[41] Plaintiffs are not attempting to hold Defendant City of San Diego responsible for rogue or one-off acts of individual employees. Rather, Plaintiffs are challenging a citywide policy—or at least a citywide "custom"—which began in approximately 2011, of using MC §54.0110 as the City's primary law enforcement tool in dealing with people who are homeless.

49. Starting in 2011, a stark and rapid increase in citations and arrests—primarily targeting the homeless population[42]—suggests that policymakers made a top-down decision to instruct police officers to use the Code against people who are homeless. The timing of this increase also suggests a policy decision since the City's use of the state illegal lodging statute had recently been limited under the *Spencer* settlement agreement with homeless advocates.

50. In addition to inferences that can be drawn from the above facts, Former Police Sergeant and head of the SDPD's Homeless Outreach Team Rick Schnell has confirmed that the City of San Diego made a deliberate policy decision to use MC

---

[41] 436 U.S. 690-691 (1978).

[42] *Law Intended to Address Trash Dumpsters Is Increasingly Being Used on the Homeless,* Voice of San Diego, Davis, Aug. 15, 2016.

§54.0110 to address homelessness and got clearance for this policy decision from the City Attorney's office.[43]

51. The City's policy of addressing homelessness under MC §54.0110 has become notorious statewide. UC Berkeley's Policy and Law Clinic referred to the City's policy as a "creative tactic to target homeless people in public spaces." The Clinic noted the sharp rise in punishments of people living on the street under the Code and the fact that this increase occurred following the City's *Spencer* settlement with homeless advocates.

52. The facts above leave little doubt that Plaintiffs are challenging a citywide policy or custom, as required under *Monell.*

### SECOND CLAIM FOR RELIEF
### Cruel and Unusual Punishment in Violation of the
### United States and California Constitutions

53. Plaintiffs incorporate the allegations in paragraphs 1-43 above.

54. Forces beyond Plaintiffs' control, such as unemployment, poverty, medical conditions, and the failure of the Defendant to provide alternatives, including but not limited to those which may be mandated by law, have compelled Plaintiffs and others to live and place their belongings in public.

55. Because of Plaintiffs' status as homeless and unsheltered, Plaintiffs must carry their belongings—including items necessary for their health, safety, and

---

[43] UC Berkeley Law, Policy Advocacy Clinic, *California's New Vagrancy Laws*, at p. 26 (Feb., 2015). Available at: http://www.cohsf.org/wp-content/uploads/2014/08/New-Vagrancy-Laws-20150212-final-v5.3-1.pdf

AMENDED COMPLAINT FOR INJUNCTIVE & DECLARATORY RELIEF

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

security—with them in their daily lives. Plaintiffs must set themselves and their belongings down on public property because they do not have access to private shelter or storage. Placing belongings on public property constitutes an involuntary and unavoidable manifestation of the Plaintiffs' status as homeless. Plaintiffs may not avoid committing acts that violate MC §54.0110, which criminalizes placing any object on public property, at any time for any length of time, even a moment, ever.[44]

56. Defendants' pattern of citing, arresting, seeking stay-away orders, prosecuting, trying, convicting, and fining or incarcerating homeless individuals for placing their belongings in public, under color of law, constitutes punishment of Plaintiffs based on their status as homeless persons, and as such, is cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution.

57. Plaintiffs have standing to bring this suit under the Eighth Amendment of the United States Constitution, as well as Article 1, §17 of the California Constitution, for the following reasons: (1) the punishments, including stay-away orders, that have been imposed upon Plaintiffs are of the type which should be and are limited and

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

---

[44] In a *Statement of Interest of the United States in Bell v. City of Boise*, 834 F.Supp.2d 1103, filed August 6, 2015 (available at: *https://www.justice.gov/crt/file/761211/download*) the U.S. Department of Justice clarified its recommended framework for analyzing Eighth Amendment claims relating to criminalization of homelessness:

"If sufficient shelter space is unavailable because a) there are inadequate beds for the entire population, or b) there are restrictions on those beds that disqualify certain groups of homeless individuals (e.g., because of disability access or exceeding maximum stay requirements), then it would be impossible for some homeless individuals to comply with these ordinances. As set forth below, in those circumstances enforcement of the ordinances amounts to the criminalization of homelessness, in violation of the Eighth Amendment."

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

prohibited by the Eighth Amendment; (2) the punishments that have been imposed upon Plaintiffs are grossly disproportionate to the severity of the "crime" of setting down one's belongings; and (3) the acts and conduct which have been made criminal and for which Plaintiffs have been cited, arrested, and otherwise punished are acts and conduct of which the Eighth Amendment and Article 1, §17 of the California Constitution prohibit criminalization, conviction and punishment.

### THIRD CLAIM FOR RELIEF
**Violation of Due Process Under the**
**United States and California Constitutions**

58. Plaintiffs incorporate the allegations in paragraphs 1-43 above.

59. The Fifth and Fourteenth Amendments to the United States Constitution and Article I, §7 of the California Constitution, guarantee that no person shall be deprived of life, liberty, or property without due process of law.

60. Under the requirements of Due Process, laws cannot be vague, nor can they be written in a way that encourages arbitrary and discriminatory enforcement.[45] Laws must be reasonably certain and definite so that ordinary people can understand what conduct is prohibited.[46] Laws that fail "to draw a clear line between innocent and criminal conduct," are unconstitutionally vague.[47]

---

[45] *People v. Heitzman*, 9 Cal. 4th 189, 199–200 (1994).

[46] *Id.*

[47] *Desertrain v. Los Angeles*, 754 F.3d 1147, 1155–56 (9th Cir. 2014)

61. MC §54.0110 applies to every person who "places" any "object" on public property at any time. While the Code does not define any of its terms, [48] the dictionary defines the verb "place" as "to put in or as if in a particular place or position," with the synonym "set."[49] People routinely "place," "put," and "set" "objects" on public property for many reasons—whether setting down a shopping bag on the sidewalk, picnicking on a blanket in the park, or parking a car on a public street.[50] By its terms, MC §54.0110 proscribes these routine daily activities.[51]

62. Importantly, MC §54.0110 does not specify how long an object must be on public property to be considered a violation. As a result, a person of ordinary intelligence is left to wonder whether their conduct of placing an item on public property (for example, parents of a child selling lemonade or cookies on the sidewalk) will be treated as a violation of the statute.

---

[48] In *Desertrain*, the Ninth Circuit struck down an ordinance for failing to define its terms. *Id.* at 1156. That ordinance prohibited using a vehicle "as living quarters either overnight, day-by-day, or otherwise," and was found to be vague because it did not define "living quarters," or "otherwise." *Id.*

[49] *Merriam-Webster Dictionary* definition of the verb "place", available at: https://www.merriam-webster.com/dictionary/place

[50] In *Kolender v. Lawson*, the U.S. Supreme Court struck down a California statute requiring people loitering on the street to provide "credible and reliable" identification and to account for their presence when requested by a police officer, finding the law was unconstitutionally vague because it failed to clarify what was meant by "credible and reliable."

[51] The Supreme Court struck down a Jacksonville ordinance banning "night walking" because it banned activities that are normally innocent. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 163 (1972).

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

63. Additionally, the Code's vague wording promotes and results in arbitrary enforcement. On the beat, the Code's enforcement varies depending on the whims and goals of individual officers. Some officers issue citations for placing a small object on the sidewalk (like a coffee heating device, in the case of Sheri Pasanen) for a short period of time; others do not. The City rarely, if ever, cites, arrests, or issues stay-away orders under the Code to homeowners, apartment dwellers, or business owners; yet, it frequently takes these enforcement actions under the Code against people experiencing homelessness. By allowing for such wide-ranging interpretations of the Code, the City impermissibly and "necessarily entrusts lawmaking to the moment-to-moment judgment of the policeman on his beat."[52]

64. The San Diego Municipal Code contains general rules for the construction and interpretation of all of its code sections. MC §11.0201 provides: "[t]he provisions of this Code and all proceedings under it are to be construed with a *view to effect its objects* and to *promote justice*." MC §11.0209(e) provides: "[w]ords and phrases used in this Code and not specifically defined shall be construed *according to the context* and approved usage of the language." Both rules weigh against the City's use of the Encroachment Code to address homelessness. First, using the Code to address homelessness does not "*effect [the Code's] objects*" because the Code was not designed for this purpose. The Code's legislative history and intent deal with

---

[52] *Kolender v. Lawson,* 461 U.S., at 360, 103 (1983).

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

trash dumpsters left out after trash day—not people experiencing homelessness. Further, the Code's broad definition of the term "encroachment" is confusing and out of "context."[53] Typically, the legal definition of "encroachment" refers to permanent or semi-permanent fixtures[54]—not objects temporarily placed on the sidewalk by their owner. Moreover, the verb "place," which connotes a temporary condition, is out of "context" with the other verbs in the section ("erect, place, allow to remain, construct, establish, plant, or maintain"), which convey permanence. Temporarily "placing" a backpack on the sidewalk is different than "erecting," "allowing to remain," "constructing," "establishing," "planting," or "maintaining" a more permanent structure on public property. The "context" of these permanent-sounding verbs do not provide guidance as to when temporarily "placing" an object on the sidewalk should be considered a violation. Second, using the Encroachment Code to address homelessness does not *promote justice*." Rather, the City unfairly uses the Code's vague wording as a catch-all enforcement to target the City's homeless population when it wants to "move" these people out of sight. Without any guidance as to the specific area and timeframe one can place their belongings on the

---

[53] Plaintiffs recognize that a code's title does not govern its meaning, but titles are relevant as one of many possible contextual clues to provide notice to the public about the nature of the conduct proscribed by the Code. Here, the title does not help provide context to the Code's use against people experiencing homelessness.

[54] *Black's Law Dictionary*: "[a]n encroachment upon a street or highway is a fixture, such as a wall or fence, which intrudes into or invades the highway or encloses a portion of it, diminishing its width or area, but without closing it to public travel."

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

sidewalk, people experiencing homelessness are targeted indiscriminately. They are always told to "move," but they are never told where to go, or how their very existence can come into compliance with the law. The City's use of the Encroachment Code as a catch-all that turns homelessness into a crime does not "*promote justice*."[55]

65. Defendants have distorted the Encroachment Code and used it to advance an illegal policy of "they just need to move."  MC §54.0110 bars a substantial amount of innocent conduct, contains no legislative or administrative guidelines for its

---

[55] This case is distinguishable from a 2011 vagueness challenge to this Code based on free speech-related conduct. *Davidovich v. City of San Diego*, UCSD CASE NO. 11cv2675 WQH-NLS. There, Plaintiffs' vagueness challenge rested on the contention that the Code "fail[ed] to establish standards for the police and public that are sufficient to guard against the arbitrary deprivation of liberty interests and fails to give fair notice of what acts will be punished so that *First Amendment rights are                chilled*."                *Id.*                at                9.

    The court's ruling denying Plaintiffs motion for a TRO focuses primarily on First Amendment issues. One paragraph (of the 11-page ruling) discusses whether the Encroachment Code is vague on its face. Importantly, the court's holding is limited to the First Amendment context, reading: "[t]he Court concludes that the ordinance provides adequate guidelines to govern law enforcement and to avoid the potential for arbitrarily suppressing First Amendment liberties."

    The City argued in *Davidovich* that the Encroachment Code gives fair warning of the conduct it bans "when read together, in context, and based on human experience." The City's argument in that case is problematic because neither the context of this Code nor "human experience" provide clarity (much less certainty) on how the Code should be enforced. As explained above, the context of the Code suggests that it bars permanent structures on public property—not temporarily placing belongings on the sidewalk. As for "human experience," it is unclear whose human experience should be the basis of the Code's enforcement. If officers on the beat are to use their own "human experience" to determine how to interpret and enforce the law, this is precisely the type of arbitrary enforcement that vagueness case law prohibits.

    Finally, even though the *Davidovich* court found that the statute was not so vague as to support a TRO in that case, Plaintiffs here are not seeking a TRO and thus not subject to the higher burden required to establish what the *Davidovich* called an "extraordinary and drastic remedy."

enforcement, and it places in the citing or arresting officer the discretion to determine whom to cite or arrest based on the officer's judgment of who, or what, that person is. Nothing stops officers from using arbitrary factors (like the quality of one's clothing, or the tidiness of one's appearance) to make enforcement decisions. Police use this unbridled discretion to selectively target San Diego's homeless population.

66. MC §54.0110 was never intended by City Council to be used against people living on the street, and homelessness stakeholders were never put on notice of this use of the law, nor was the public afforded an opportunity to raise policy concerns.

67. Further, the expansive stay-away orders sought as a condition of release from jail to individuals arrested for MC §54.0110 violate due process by barring constitutionally protected conduct of being on a public street or sidewalk.

### FOURTH CLAIM FOR RELIEF
### Violation of Equal Protection Under the
### United States and California Constitutions

68. Plaintiffs incorporate the allegations contained in paragraphs 1-43 above.

69. The 14th Amendment of the United States Constitution, and Article 1, §7 of the California Constitution, require equal treatment of persons similarly situated.

70. Rather than applying MC §54.0110 evenhandedly to all people, Defendants actively and selectively target people who are homeless with citations, arrests, detentions, and stay-away orders under the Code. In contrast, enforcement of MC §54.0110 against housed residents and businesses is relaxed. Housed residents or business owners are rarely cited under the Code, and they are never arrested,

AMENDED COMPLAINT FOR INJUNCTIVE & DECLARATORY RELIEF

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

detained, or issued stay-away orders under the Code. If any enforcement action is taken against housed residents (which is rare), the typical city response is a courtesy letter, rather than an immediate dispatch of police officers to the scene.

71. Even under rational basis review (which requires only that a be rationally related to legitimate government interest), targeting a politically powerless or unpopular group (e.g. people experiencing homelessness) can never constitute a legitimate governmental interest.[56]

72. Defendants' purposeful and intentional singling-out people who are homeless for harsher enforcement of MC §54.0110 violates the constitutional guarantee of Equal Protection.

### FIFTH CLAIM FOR RELIEF
**Violation of Right to Travel**

73. Plaintiffs incorporate the allegations contained in paragraphs 1-43 above.

74. Defendants pressure stay-away orders to people who are homeless in exchange for release from jail after arrests for violation of MC §54.0110. These orders prohibit individuals from traveling within a certain distance of the incident of arrest. When the orders are violated, additional arrests and stay-away orders compound and restrict travel in the City—sometimes barring access to vital services.

---

[56] See, *U.S. Dept. of Agriculture v. Moreno*, 413 U.S. 528, 313 (1973)

75. The right to travel is protected by Article I, §7 and §24 of the California Constitution. Both intrastate and intra-municipal travel are recognized as basic human and personal liberty rights, fundamental to democratic society.[57]

76. Defendants' use of stay-away orders goes far beyond the nature of the offense of "encroachment." Rather than prevent future violations of the "crime," such orders bar access to the entire area surrounding the incident—including areas where services are located. This restriction on freedom of movement violates Plaintiffs' rights to travel.

### SIXTH CLAIM FOR RELIEF
### Unreasonable Search and Seizure

77. Plaintiffs incorporate the allegations contained in paragraphs 1-43 above.

78. The U.S. Constitution's 4th Amendment and Article I, §13 of the California Constitution protect the right to be free from unreasonable search and seizure.

79. Defendants routinely search, arrest, and seize property from Plaintiffs under the MC § 54.0110, in violation of the laws and the settlement and Court Order in *Isaiah Project v. City of San Diego*.[58]

80. MC §54.0110 is so grossly and flagrantly unconstitutional that a person of reasonable prudence would be bound to see the flaws in the statute, and therefore it cannot serve as a valid basis for a search, seizure, or arrest.

---

[57] *Tobe v. City of Santa Ana*, 9 Cal. 4th 1069, 1100 (1995).

[58] *USDC Case No. 09 CV 2699 BTM (WVG)*.

DREHER LAW FIRM

350 W. ASH STREET SUITE 101

SAN DIEGO, CA 92101

81. In *Howard v. State*[59], the court found that a Fourth Amendment claim to suppress evidence applied to a defendant who was arrested under an ordinance later found to be "flagrantly unconstitutional" because police officers on the beat were charged with interpreting the law's meaning and deciding its scope.[60] Similarly, MC §54.0110 is so vague that its interpretation and scope must necessarily be, and is, randomly decided by officers on the beat.

82. In *State v. White*[61], the court found that an ordinance was "grossly and flagrantly unconstitutional," and not a valid basis for arrest, where other similar ordinances had been struck down on constitutional grounds.[62]

83. Defendants should be on notice of the unconstitutionality of MC §54.0110 because the United States released a 2015 Statement of Interest[63] explaining that laws like MC §54.0110 that make compliance impossible for people experiencing homeless are violative the Eighth Amendment.[64]

---

[59] *Howard v. State*, 617 S.W.2d 191 (Tex.Crim.App.1979).

[60] The ordinance in question made it unlawful "for any person within the city to be in the nighttime in or about public or private buildings or premises, where he has no right or permission to be, under suspicious circumstances, and without being able to give a satisfactory account of same."

[61] 97 Wash.2d 92, 640 P.2d 1061 (1982)

[62] That statute made it a misdemeanor to "obstruct a public servant" by failing "without lawful excuse" to provide true information "lawfully required" by a "public servant." Similar laws had been found to be void for vagueness.

[63] *Statement of Interest of the United States in Bell v. City of Boise*, 834 F.Supp.2d 1103, filed August 6, 2015, available at: https://www.justice.gov/crt/file/761211/download

[64] See, *Jones v. City of Los Angeles*, 444 F.3d 1118, (9th Cir. Cal. 2007).

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

84. Because MC §54.0110 is grossly and flagrantly unconstitutional, Defendants' searches, seizures, and arrests under it violate Plaintiffs' protection against unreasonable searches and seizures.

## SEVENTH CLAIM FOR RELIEF
### Declaratory Relief

85. Plaintiffs incorporate the allegations contained in paragraphs 1-43 above.

86. An actual controversy exists between Plaintiffs on the one hand, and Defendants on the other, as to whether Defendants have violated 42 U.S.C. §1983 by inflicting cruel and unusual punishment upon Plaintiffs by punishing their homeless status by citing, arresting, pressuring and obtaining stay-away orders, and otherwise punishing Plaintiffs pursuant to MC §54.0110. In addition, an actual controversy exists between Plaintiffs on the one hand, and Defendants on the other, as to whether Defendants, in doing the acts alleged herein, have violated Plaintiffs' United States and California Constitutional rights—including Equal Protection, Due Process, the right to travel, and to be free of unreasonable search and seizure.

87. Code of Civil Procedure §1060 provides that a person who desires a declaration of his rights or duties with respect to another may seek such a declaration.

88. Plaintiffs are and represent persons desiring a declaration of their rights and duties with respect to Defendants, within the meaning of Code of Civil Procedure §1060 because, among other reasons, Plaintiffs are, and represent the interests of, homeless residents and taxpayers directly affected by Defendants' actions.

89. Plaintiffs desire a judicial determination of the rights and duties of Defendants, and of their compliance or non-compliance with 42 U.S.C §1983, and whether Defendants have abridged or violated Plaintiffs' United States and California Constitutional rights. Such declaration is necessary and appropriate at this time in order that Defendants can comply with their duties, and so that the rights, health and safety of Plaintiffs, Class Members and the public can be protected.

### NINTH CLAIM FOR RELIEF
**Injunctive Relief - CCP §§526(a) & 527**

90. Plaintiffs incorporate the allegations contained in paragraphs 1-43 above.

91. As Class Members, injunctive relief is available to Plaintiffs pursuant to Code of Civil Procedure §§526(a) and 527 prior to Class certification.

92. Unless and until Defendants are enjoined by order of this Court from failing to comply with their obligations under the law, and enjoined from issuing citations pursuant to MC §54.0110 in violation of Plaintiffs' Constitutional rights, and until Defendants are commanded to comply with their obligations to refrain from issuing such citations unless and until an alternative is available to Plaintiffs as set forth above, Plaintiffs are suffering and will suffer great and irreparable injury including:

    a.   They will be deprived of rights under Federal and State law;

    b.   They will suffer injury which cannot adequately be remedied by money;

    c.   They will suffer injuries which are difficult or impossible to quantify; and

d.    The important rights protected by the California and United States Constitutions may be forever compromised and lost.

## **PRAYER FOR RELIEF**

Accordingly, Plaintiffs request judgment as follows:

1. For a declaration that Defendants have violated Plaintiffs' rights by inflicting cruel and unusual punishment and unlawful search and seizure upon them by arresting and citing them under MC §54.0110 in violation of 42 U.S.C. § 1983;

2. For a declaration that Defendants have violated and continue to violate Plaintiffs' State and Federal Constitutional rights of Due Process by enforcing the impermissibly vague language of MC §54.0110;

3. For a declaration that Defendants have violated and will violate Plaintiffs' State and Federal Constitutional rights to Equal Protection under law by enforcing MC §54.0110 against them and subjecting them to harsher punishment under it;

4. For a declaration that Defendants have violated and continue to violate Plaintiffs' State and Federal Constitutional right to travel by issuing stay-away orders as a condition of release from jail for violating MC §54.0110;

5. For an injunction enjoining Defendants and their agents, servants, and employees, and all other persons acting under and concert with or for them, from enforcing San Diego Municipal Code §54.0110 against Plaintiffs, the Class, and all other people who are homeless, unless and until Defendants identify an alternative

DREHER LAW FIRM

350 W. ASH STREET SUITE 101

SAN DIEGO, CA 92101

location for Class Members to place their belongings, and thereby refrain from violating these people's 42 U.S.C. §1983 and State and Federal Constitutional rights;

6. Injunctive relief preventing Defendants from offering, using, or seeking stay-away orders in conjunction with arrests or citations under MC §54.0110;

7. Injunctive relief requiring Defendants to drop all pending charges, court cases, stay-away orders, fines, and warrants against Class Members for past violations of MC §54.0110, unless the City of San Diego can prove that the individual(s) charged had an alternative location to place their belongings at the time of the violation;

8. For Plaintiffs' attorneys fees and costs of suit incurred as provided by Gov. Code §800 and Code of Civil Procedure §1021.5 and as otherwise provided by law;

9.   Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,


Dated: January 18, 2018                    **DREHER LAW FIRM**

By:   /s/ R.S.Dreher
      Robert Scott Dreher

      *and*

By:   /s/Catherine Rogers
      Catherine E. Rogers

AMENDED COMPLAINT FOR INJUNCTIVE & DECLARATORY RELIEF

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

# EXHIBIT 1

# PLAINTIFFS' KNOWN CITATIONS & ARRESTS UNDER MC 54.0110

Sheet1

| Incident | Cite/Arrest | Date | Last Name | First Name | DOB | Race | Sex | Street | Zip | Off # | Off Last | Off First |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1930852 | CITATION | 3/10/2016 | ARUNDEL | ERIC | 5/19/1959 | WHITE | MALE | F | | 92101 | 6206 Worthington | Phillip |
| 1883677 | CITATION | 5/20/2016 | ARUNDEL | ERIC | 5/19/1959 | HISPANIC | MALE | PARK | | 92101 | 5907 Flores | Raul |
| 1986375 | CITATION | 7/19/2016 | ARUNDEL | ERIC | 5/19/1959 | WHITE | MALE | PARK | | 92101 | 6425 Erickson | Mark |
| 1935255 | CITATION | 2/1/2017 | ARUNDEL | ERIC | 5/19/1959 | WHITE | MALE | C | | 92101 | 5312 MANGUM | NULL |
| 1935270 | CITATION | 2/14/2017 | ARUNDEL | ERIC | 5/19/1959 | WHITE | MALE | E | | 92101 | 5312 MANGUM | NULL |
| 1934975 | CITATION | 3/23/2017 | ARUNDEL | ERIC | 5/19/1959 | WHITE | MALE | C | | 92101 | 5312 MANGUM | NULL |
| 1929746 | CITATION | 1/14/2016 | ARUNDEL | ERIC | 5/19/1959 | WHITE | MALE | K | | 92101 | 3655 Conti | Jaime |
| 1986608 | CITATION | 6/21/2016 | ARUNDEZ | ERIC | 5/19/1959 | WHITE | FEMALE | C | | 92101 | 6929 Huff | Jeremy |
| 1986867 | CITATION | 7/20/2016 | ARUNDEZ | ERIC | 5/19/1959 | OTHER | MALE | PARK | | 92101 | 6609 Sanchez | Anthony |
| | | | | | | | | | | | | |
| 1930666 | CITATION | 5/12/2016 | BOYER | OWEN | 3/14/1981 | WHITE | MALE | PARK | | 92101 | 6206 Worthington | Phillip |
| 1986609 | CITATION | 6/21/2016 | BOYER | OWEN | 3/14/1981 | WHITE | MALE | C | | 92101 | 6609 Sanchez | Anthony |
| 1986866 | CITATION | 7/20/2016 | BOYER | OWEN | 3/14/1981 | WHITE | MALE | PARK | | 92101 | 6206 Worthington | Phillip |
| 1935262 | CITATION | Feb-8-17 | BOYER | OWENS | ###### | WHITE | MALE | MARKET | | | | |
| | | | | | | | | | | | | |
| 1933866 | CITATION | 12/6/2016 | HAYS | JEFFREY | 7/21/1958 | BLACK | MALE | J | | 92101 | 6113 Fernandez | Alejandro |
| | | | | | | | | | | | | |
| 1413388 | CITATION | 9/17/2013 | KELSEY | ROBERT | 11/2/1965 | WHITE | MALE | K | | 92101 | 6288 Bismark | Cara |
| 1577260 | CITATION | 12/25/2014 | KELSEY | ROBERT | 11/2/1966 | WHITE | MALE | 16TH | | 92113 | 6929 Huff | Jeremy |
| 1986985 | CITATION | 8/10/2016 | KELSEY | ROBERT | 11/2/1965 | WHITE | MALE | PARK | | 92101 | 6609 Sanchez | Anthony |
| 17116205 | ARREST | 3/14/2017 | KELSEY | ROBERT | 11/2/1965 | WHITE | MALE | COMMER | | 92113 | 5940 COLE | NULL |
| 2065632 | CITATION | 3/29/2017 | KELSEY | ROBERT | 11/2/1965 | WHITE | MALE | KEARNY | | 92113 | 6640 UNKNOWN | NULL |
| | | | | | | | | | | | | |
| 1633944 | CITATION | 2/26/2015 | LEFTRIDGE | ALEXIS | 8/15/1994 | BLACK | FEMALE | 16TH | | 92101 | 6130 Reilly | Arden |
| 1685110 | CITATION | 4/8/2015 | LEFTRIDGE | ALEXIS | 8/15/1994 | BLACK | FEMALE | 16TH | | 92101 | 7302 Marks | Kyle |
| 1636008 | CITATION | 4/9/2015 | LEFTRIDGE | ALEXIS | 8/15/1994 | BLACK | FEMALE | 16TH | | 92101 | 6605 NULL | NULL |
| 1714313 | CITATION | 5/6/2015 | LEFTRIDGE | ALEXIS | 8/15/1994 | BLACK | FEMALE | 14TH | | 92113 | 6888 Willett | Chris |
| 1635659 | CITATION | 6/4/2015 | LEFTRIDGE | ALEXIS | 8/15/1994 | BLACK | FEMALE | 14TH | | 92113 | 7342 Huynh | Nicholas |
| 1673018 | CITATION | 9/15/2015 | LEFTRIDGE | ALEXIS | 8/15/1994 | BLACK | FEMALE | 16TH | | 92113 | 3655 Conti | Jaime |
| 1672834 | CITATION | 10/8/2015 | LEFTRIDGE | ALEXIS | 8/15/1994 | BLACK | FEMALE | 16TH | | 92113 | 5385 Adams | Robert |
| 1675028 | CITATION | 11/3/2015 | LEFTRIDGE | ALEXIS | 8/15/1994 | BLACK | FEMALE | 08TH | | 92101 | 5385 Adams | Robert |
| 1930835 | CITATION | 2/23/2016 | LEFTRIDGE | ALEXIS | 8/15/1994 | BLACK | FEMALE | F | NULL | | 6425 Erickson | Mark |
| 1986605 | CITATION | 6/21/2016 | LEFTRIDGE | ALEXIS | 8/15/1994 | BLACK | FEMALE | B | | 92101 | 6929 Huff | Jeremy |
| 1987953 | CITATION | 8/11/2016 | LEFTRIDGE | ALEXIS | 8/15/1994 | BLACK | FEMALE | 16TH | | 92101 | 6206 Worthington | Phillip |
| 1986989 | CITATION | 8/17/2016 | LEFTRIDGE | ALEXIS | 8/15/1994 | BLACK | FEMALE | MARKET | | 92101 | 6289 Hilton | Joseph |
| 1933081 | CITATION | 10/10/2016 | LEFTRIDGE | ALEXIS | 8/15/1994 | BLACK | FEMALE | 16TH | | 92101 | 7594 Olson | Brian |

Sheet1

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 16167175 | ARREST | 10/19/2016 | LEFTRIDGE | ALEXIS | 8/15/1994 | BLACK | FEMALE | 16TH | | 92101 | 5987 WALLACE | NULL |
| 16174791 | ARREST | 11/22/2016 | LEFTRIDGE | ALEXIS | 8/15/1994 | BLACK | FEMALE | 16TH | | 92101 | 6926 Governski | Colin |
| | | | | | | | | | | | | |
| 1927663 | CITATION | 12/29/2015 | SANDERS | MICHAEL | 4/8/1959 | WHITE | MALE | K | | 92101 | 6494 McGowan | David |
| 1929745 | CITATION | 1/14/2016 | SANDERS | MICHAEL | 4/8/1959 | WHITE | MALE | K | | 92101 | 3655 Conti | Jaime |
| 1986607 | CITATION | 6/21/2016 | SANDERS | MICHAEL | 4/8/1959 | WHITE | MALE | C | | 92101 | 6929 Huff | Jeremy |
| 16155226A | ARREST | 8/29/2016 | SANDERS | MICHAEL | 4/8/1959 | WHITE | MALE | GRAND | | 92109 | 6929 Huff | Jeremy |
| 1987917 | CITATION | 2/1/2017 | SANDERS | MICHAEL | 4/8/1959 | WHITE | MALE | C | | 92101 | 5312 MANGUM | NULL |
| 1935271 | CITATION | 2/14/2017 | SANDERS | MICHAEL | 4/8/1959 | WHITE | MALE | E | | 92101 | 5312 MANGUM | NULL |
| 1934974 | CITATION | 3/23/2017 | SANDERS | MICHAEL | 4/8/1959 | WHITE | MALE | C | | 92101 | 5312 MANGUM | NULL |
| | | | | | | | | | | | | |
| 1933831 | CITATION | 11/15/2016 | SMITH | DEBRA | 1/26/1957 | WHITE | FEMALE | J | | 92101 | 7082 Armstrong | William |
| 1928781 | CITATION | 2/23/2017 | SMITH | DEBRA | 1/26/1957 | WHITE | FEMALE | 15TH | | 92101 | 5978 MARTINEZ | NULL |
| 1928786 | CITATION | 2/28/2017 | SMITH | DEBRA | 1/26/1957 | WHITE | FEMALE | 15TH | | 92101 | 3793 WACLAWEK | NULL |
| | | | | | | | | | | | | |
| 1987402 | CITATION | 7/21/2016 | STEVENSON | RICHARD | 11/2/1974 | BLACK | MALE | PARK | | 92101 | 6929 Huff | Jeremy |
| 1986715 | CITATION | 8/29/2016 | STEVENSON | RICHARD | 11/2/1974 | BLACK | MALE | 19TH | NULL | | 6206 Worthington | Phillip |
| 1987863 | CITATION | 9/14/2016 | STEVENSON | RICHARD | 11/2/1974 | BLACK | MALE | 19TH | NULL | | 6609 Sanchez | Anthony |
| 17121317 | ARREST | 4/5/2017 | STEVENSON | RICHARD | 11/2/1974 | BLACK | MALE | 19TH | | 92113 | 3655 CONTI | NULL |
| 17121317 | ARREST | 4/5/2017 | STEVENSON | RICHARD | 11/2/1974 | BLACK | MALE | 19TH | | 92113 | 3655 CONTI | NULL |
| | | | | | | | | | | | | |
| 1577192 | CITATION | 11/25/2014 | PASANEN | SHERI | ######## | WHITE | FEMALE | CESAR E | | 92113 | 7256 Lang | Ryan |
| | | | | | | | | | | | | |
| | CITATION | Nov-16 | MELVIN | RICHARD | | | | | | | | |